## DAY vs. WETHERBY and others.

*Parties — Partnership — Trusts — Fraudulent Conveyance.*

1. In an action to have real estate, which had been conveyed by A. & Co. to W in trust, sold, and the proceeds applied to the payment of debts due from A & Co. to the plaintiffs, where the sole issues were, whether the conveyance was made to secure the indebtedness of the firm of A & B or that of their successors, A & Co., to the *cestui que trust,* and, if either, whether the conveyance was valid as against the creditors of the latter firm—W being made a defendant; *Held,* that on his motion the *cestui que trust* should also be made a party.

2. The general rule in equity is, that in suits respecting trust property the *cestui que trust* is a necessary party; and the exceptions allowed to the rule do not apply to this case.

3. The firm of A and B dissolved, being indebted to a bank; and was succeeded by the firm of A & Co., composed of the members of the old firm and C, a new partner. Subsequently A, B and C conveyed to W by a deed absolute on its face, real estate, acquired mostly with the assets of the old firm, but partly with money contributed by C. This conveyance was in trust to secure the indebtedness of one or both the firms to said bank. There being evidence to show that the understanding and intention in the execution of said deed by C was, that his interest in said property should be applied to secure the indebtedness of the *new* firm, *it seems* that equity would enforce this understanding for the benefit of the creditors of said firm.

5. The mere fact that a partnership is embarrassed and unable to meet its debts at the time real property thereof is conveyed to secure a particular indebtedness, is not sufficient ground for avoiding the conveyance.

6. A conveyance by the members of the *new* firm of real property thereof made in good faith to secure debts due from the old firm at its dissolution, (said property having been mainly purchased with funds of said old firm), *held* valid as against the creditors of the new firm.

7. Where a partnership is administering its affairs in good faith, its creditors have no lien on the partnership fund; and the equities between the joint and separate creditors of the firm depend solely on the equities between the partners themselves and must be worked out through them.

APPEAL from the Circuit Court for *St. Croix* County.

The plaintiff, as assignee of a judgment in favor of Lester

Sexton and others, brought this action in behalf of himself and other judgment creditors, who might choose to join, against *E. Dore*, *P. Dwyer* and *R. Joyce*, co-partners, under the firm name of *Dore & Co.*, and *P. Wetherby* and *J. M. Whaley*, to set aside a deed, absolute in form, of a store and lot alleged to be partnership property, given by such co-partners to said *Wetherby* as security for a debt of the firm to the First National Bank of Hudson, and also a deed subsequently executed by *Wetherby* to said *Whaley*; alleging such deeds to have been executed in pursuance of a fraudulent arrangement between the parties to hinder and delay creditors, and to be inequitable and fraudulent impediments to the satisfaction of their judgment, and that the judgment debtors had no property out of which it could be satisfied. .

The defendants, *Wetherby* and *Whaley*, answered, admitting the plaintiff's judgment, the execution of the conveyances mentioned in the complaint, and the payment of the debt of *Dore & Co.*, but denying all the allegations of fraud, and averring that the deed to *Wetherby* was given for the purpose of paying a debt due from *Dore* and *Dwyer* to the bank, and not for the purpose of paying or securing any debt of the firm of *Dore & Co.*, and that he received it solely as agent for the bank, and that the deed to *Whaley* was made for a valuable consideration.

At the trial, the defendant *Wetherby* moved, upon his affidavit, showing that in all the transactions relating to the land he acted merely as agent for the First National Bank of Hudson, that such bank be made a party to the action; which motion was denied.

The defendant *Joyce*, as a witness for the plaintiff, gave testimony tending to show that he entered into partnership with the defendants *Dore* and *Dwyer*, after the dissolution of the firm previously existing under the name of *Dore & Dwyer*, and was jointly interested with them in the store and lot conveyed to *Wetherby*, and that, when he executed the deed to *Wetherby*, he understood it to be given for the purpose of se-

curing a debt due from the new firm of *Dore & Co.* to the bank, and not for the purpose of securing any debt of the old firm, although such debt was mentioned during the negotiations. He also testified that he owned one-third interest in the business of the firm of *Dore & Co.*, and that the debt of that firm to the bank was paid out of the proceeds of its goods sold on execution. The testimony of the defendant *Dore* also tended to show that the deed was given to secure the debt of *Dore & Co.*, and that the debt of the old firm was secured by notes and accounts; but, on cross-examination, he acknowledged that he had testified in another action that the deed was held also as security for the debt of the old firm, and that a paper to that effect, which was produced, was signed by him. There was also testimony that the lot conveyed to *Wetherby* was bought for *Dore & Co.*, and paid for by their funds, and the store building was erected for their use, but was mostly paid for by the funds of *Dore & Dwyer*.

The defendant introduced proof tending to show that the bank, for which the defendant *Wetherby* acted, held a debt against the firm of *Dore & Co.*, to secure which they confessed a judgment, which was subsequently collected on execution, and also a debt against the firm of *Dore & Dwyer*, to secure which the three partners united in giving the deed of the store and lot to him, all understanding that it was given to secure that debt; and that he promised to give them back a paper stating what the deed was given for, and afterward did deliver one to *Dore*, whereby he acknowledged that he received the deed in trust to secure the indebtedness of *Dore & Dwyer* to the bank, and agreed to hold the property and, if necessary, sell it at public or private sale for the best interests of *Dore & Dwyer*, and render to them the surplus after paying the debt to the bank; that *Joyce's* interest in the lot did not exceed $100, and that *Joyce* consented to execute the deed upon *Wetherby's* agreeing to apply his interest in the lot on the debts of *Dore & Co.*. A paper signed in the firm name of *Dore & Dwyer*,

assigning all their remaining interest in the store and the books and accounts, after payment of the bank debt, to certain other creditors, was also introduced. There was some testimony tending to show that the defendant *Whaley* had notice that the deed to *Wetherby* was given merely as security for the debt of *Dore & Co.* The title remained in *Wetherby* about three years before he conveyed it to *Whaley.* Evidence offered by plaintiff, after defendants had rested, to show the recovery and docketing of his and other judgments against *Dore & Co.*, and that they remained unsatisfied; that all the assets of that firm were exhausted and applied in the payment of valid and subsisting debts, immediately after the execution of the deed to *Wetherby;* and that they were at that time entirely insolvent, to the knowledge of defendant *Wetherby*, was ruled out.

The action was tried by the court, which found all the issues in favor of the plaintiff, and rendered judgment that the deeds to *Wetherby* and *Whaley* be canceled; and those defendants appealed therefrom.

*L. P. Wetherby*, in person, for appellants, argued that the First National Bank, for which he was a mere trustee, was a necessary party, and could not be deprived of its rights unless before the court, and the refusal to make it a party was error, citing R. S., chap. 122, sec. 22; *Gelpcke v. Mil. and Hor. R. R. Co.*, 11 Wis., 454; *Miner v. Medbury*, 7 id., 100; *Carney v. Emmons*, 9 id., 114; that this action is based upon the allegations that the store and lot were owned by *Dore & Co.*, as partnership property, and turned out by them to secure a partnership debt which was subsequently paid, and that after such payment *Wetherby* conveyed away the property in fraud of the creditors of said firm; all of which allegations were specifically denied by the answer, which affirmatively averred that the deed was given to secure or pay the debt of the firm of *Dore & Dwyer* and for no other purpose, and such answer was fully proved; that the store and lot were not partnership property, the lot having been purchased before the partnership commenced, and the de-

fendant *Joyce* having merely an interest in it as tenant in common with the defendants *Dore & Dwyer*, by whom the store was built; that the findings were not justified by the issue made by the pleadings, which was, whether the deed was given to. secure the debt of *Dore & Co.*, which had been paid; and that the judgment rendered was not authorized by the finding that it was not given to secure that debt, except so far as *Joyce's* interest was concerned.

*P. L. Spooner*, of counsel for appellants, argued that, assuming *Joyce* to have owned an undivided one-third of the real estate as a tenant in common, the transaction amounted to a mortgage of that third as security for the debt of *Dore & Co.*, and of the other two-thirds as a security for the debt of *Dore & Dwyer*, and the utmost the court could do on that theory was to so declare, and adjudged the mortgage satisfied as to his third, and leave that subject to the plaintiff's execution; that the plaintiff cannot be allowed to change this action on the trial from one to set aside a mortgage on the ground that it has been satisfied, to one for the same purpose, on the ground that it was given by members of a firm to secure their individual debts, in violation of the rights of the creditors of the firm to have the property applied to the partnership debts, citing *Lackner v. Turnbull*, 7 Wis., 105; *Newton v. Allis*, 12 id., 378; *Sweet v. Mitchell*, 15 id., 641; that the equity of the joint creditors depends on, and must be worked out through that of the partners, and the firm may, by common consent, apply a portion of the joint assets to the liquidation of the private debts of one or more of its members, although the necessary result would be to postpone or frustrate the claims of joint creditors, citing 2 Leading Cases in Equity, 327–333; that, on that principle, the court should have inquired what was the understanding of the parties as to the amount of *Joyce's* interest in the store and lot, and could apply only that sum to the debts of *Dore & Co.*; that it was contrary to equity to appropriate the whole property to

the debts of *Dore & Co.*, to the exclusion of those of *Dore & Dwyer*; and that, if the interest of *Joyce* was to go to the creditors of *Dore & Co.*, to set aside the deed was not the proper remedy, but, perhaps, under the prayer for general relief, a lien in favor of the plaintiff to that extent might be declared.

*H. A. Wilson, G. Clinton and J. E. Glover*, for respondents:

1. The sheriff's return of the execution unsatisfied, is conclusive of the right of the plaintiff to maintain this action. *Sperling v. Levy*, 16 Abb. Pr. R., 426. 2. In an action to remove a fraudulent or inequitable incumbrance, the creditors need only show that a lien or *quasi* lien has been obtained upon the property in suit, by docketing a judgment in the proper county as against real estate, or by issuing an execution against personal property. *Parshall v. Tillon*, 13 How., 7; *Greenwood v. Brodhead*, 8 Barb., 593; *Clarkson v. DePeyster*, 3 Paige Ch., 320; *Brinkerhoff v. Brown*, 4 Johns., 671, 677; *Spear v. Wardell*, 1 N. Y., 144; *McCartney v. Bostwick*, 32 N. Y., 53; *Gates v. Boomer*, 17 Wis., 455; *Connell v. Radway*, 22 id., 260. 3. It is not necessary that there should be no remedy by execution. 2 Van Santf. Eq. Pr., 129. 4. The evidence to prove fraud required in equity is not so great as in cases at law. Story's Eq., 187, 373. 5. A party coming into possession of trust property with notice of the trust, will be held to be a trustee. *Mechanics' Bank of Alexandria v. Seton*, 1 Peters, 309; *Murray v. Ballou*, 1 Johns. Ch., 566; *Heatley v. Finster*, 2 id., 157; *Shepherd v. McEvers*, 4 id., 136; *Frost v. Beekman*, 1 id., 301; *Johnson v. Fleet*, 14 Wend., 181; and see, in analogy, *Long v. Fuller*, 21 Wis., 121; *Oliver v. Piatt*, 3 How. (U. S.), 333; *Wormley v. Wormley*, 8 Wheat., 422; *Gilchrist v. Stevenson*, 9 Barb., 9; Will. Eq., 559, 608. And a court of equity will relieve a creditor against him. *McCartney v. Bostwick*, 32 N. Y., 53. 6. Where property is conveyed before judgment, in fraud of creditors, the lien will still attach. *Eastman v. Schettler*, 13 Wis., 324; see also *Gates v. Boomer*, 17 id., 455. 7. Equity will assist creditors in reaching property held under a

nominal trust. Willard's Eq., 421.  8. Partnership creditors have a preference over individual creditors. Parsons on Part., 342; *Pierce v. Jackson*, 6 Mass., 242; *Trowbridge v. Cushman*, 24 Pick., 310.  9. Where a new partner is taken into the concern, the old partnership ceases to exist, and a new one arises. Parsons on Part., 406.  10. Creditors of a partnership have no specific lien on partnership property, (Parsons on Part., 342); and where a partnership is changed, retaining the assets of the old one, the creditors of the new firm are to be preferred. *Smith v. Howard*, 20 How., Pr. R., 121.  11. Real estate of partnerships is regarded in equity as partnership assets, subject to the claims of partnership creditors. Parsons on Part., 441, note " P ; " *Burnside v. Merrick*, 4 Met., 537 ; Parsons on Part., 371, 372 ; *Buchan v. Sumner*, 2 Barb. Ch., 165; *Buckley v. Buckley*, 11 Barb., 43.  12. Equity, however, will apply personal property to the payment of firm debts first.  13. It is a fraud upon partnership creditors for partners to convey partnership assets in payment of individual debts, where the partnership is insolvent. *Kirby v. Schoonmaker*, 3 Barb. Ch., 46; *Wilson v. Robertson*, 21 N. Y., 587.  14. It is not necessary to allege that the debt was contracted prior to the transfer.  In an action by a creditor to reach equitable assets, a supplemental bill may be filed to reach property subsequently acquired. *Eager v. Price*, 2 Paige, 333.  15. Where there is an actual intent to defraud or hinder prior creditors, subsequent creditors will be relieved. *King v. Wilcox*, 11 Paige, 589.  17. Where a trust is constituted, and title conveyed to the trustee for the benefit of a third party, and the purpose of the trust fails, a resulting trust arises in favor of the person creating the express one.  2 Story's Eq., §§ 1195–6 a ; Will. Eq., 599.

Cole, J.  We think the circuit court erred in refusing to make the First National Bank of Hudson a party to the action on the application of the trustee, *Judge Wetherby*.  The bank was the real party interested in the controversy.  Both the

debts of Dore & Co. and of Dore & Dwyer, belonged to it, and it is conceded on both sides that the conveyance made to *Judge Wetherby*, which it is sought to have set aside and cancelled, was given to secure the payment of one of those debts. Although *Judge Wetherby* was a stockholder in the bank at the time the conveyance of December 4th, 1866, was executed, yet it is perfectly manifest that he acted in the matter merely as the agent or trustee of the bank, taking the title for its benefit, and not for himself. The bank then is the real party in interest, and its rights, and not those of the trustee, are directly involved in the litigation. The sole issue raised by the pleadings is, whether the store and lot in controversy were conveyed for the purpose of securing the indebtedness of Dore & Dwyer, or of Dore & Co., and if either, whether the conveyance was valid as against the creditors of the latter firm. That is the issue ; and it is very plain that the bank, which is the mortgagee, should be before the court. The answer of the defendants admits that the debt of Dore & Co. to the bank is paid in full, but insists or alleges that the property was conveyed to *Judge Wetherby* (who was acting solely as agent for the bank) to secure a valid indebtedness of Dore & Dwyer to the bank, which remains unpaid. In the determination of that question, it is evident that the bank is a necessary party. The general rule in equity is, that in suits respecting the trust property brought against the trustee, the *cestui que trust* is a necessary party, because the beneficiary owns the equitable and ultimate interest affected by the decree. Story's Eq. Pleadings, § 207, and authority cited in the notes ; *The Board of Supervisors v. The Mineral Point R. R. Co.*, 24 Wis., 94–128. It is true, this general rule has its exceptions ; but those exceptions have no application to the case before us. There is no practical difficulty in bringing before the court the bank, the owner of the debt and of the mortgage given to secure its payment. Indeed, we do not well perceive how any adjudication can be had affecting the validity of the conveyance to *Judge Wetherby*, or the one made

by him to the defendant, *Whaley,* unless the bank is made a party to the action. For the bank is interested in having the mortgaged property applied to the payment of the debt of Dore & Dwyer, to the exclusion of the creditors in this suit, who are seeking to subject it to the payment of their debts. This view therefore, of the error of the circuit court in refusing to make the bank a party on the application of the agent or trustee *Wetherby,* necessarily involves a reversal of the judgment. But, notwithstanding this is so, still it becomes necessary and proper to indicate our views upon some other questions arising upon the record and discussed by the counsel, in order that the court below may have the benefit of them on the final disposition of the cause.

And in the first place we remark, that, to our minds, the evidence is perfectly clear and satisfactory that the object and intention of giving the conveyance in question to *Judge Wetherby,* were to secure the payment of the debt of Dore & Dwyer. At all events, we are entirely satisfied that this was the intention so far at least as Dore & Dwyer were concerned. It is true, there is some conflict of testimony upon that point, even. But the decided weight of testimony supports this conclusion; and especially is this so in respect to the written evidence bearing upon the question. It appears that the next day after the conveyance was made to *Judge Wetherby,* he executed and delivered the written declaration, which clearly states that the property was conveyed to him "in trust, to secure an indebtedness owing by Dore & Dwyer to the First National Bank of Hudson." Now, it is incredible that Dore should have received this paper unless it had been his understanding that the object of the conveyance was to secure the payment of that debt. It is true that *Dore* testified that he had no knowledge of this paper, and never saw it until it was produced on the trial; but the evidence was overwhelming that he is mistaken, and that the paper was read over and delivered to him at the time it was executed. And, moreover, there is the written notice served upon *Judge*

*Wetherby* and the bank a few days thereafter, which recited that the property was conveyed to secure the payment of the debt of Dore & Dwyer, and which paper *Dore* admits he signed. These written declarations, which were made deliberately about the time the deed to *Judge Wetherby* was executed, are decisive upon the question as to what debt that conveyance was intended by Dore & Dwyer to secure. It was most indubitably given by them to secure the payment of the debt of Dore & Dwyer to the bank, and not the debt of the firm of Dore & Co. It is possible that there was a further understanding on the part of *Joyce*, that whatever interest he, as partner of the firm of Dore & Co., had in the property, should be applied to the payment of the debt which the bank held against that firm. We do not say that evidence shows to our satisfaction that *Joyce* understood that his interest was to be so applied; but there is much more doubt upon this point than as to what must have been the intention and understanding of the other grantors, Dore & Dwyer. It appears that the interest of *Joyce*, as partner of the firm of Dore & Co., in this property was small; still, whatever it was, if he appropriated it to the payment of the debts of the new instead of the liabilities of the old firm, it is probable that a court of equity would make that application of his interest. And this the court might do, upon the principle which is sometimes applied in partnership cases, that where a partner has reserved a lien upon the partnership assets for the payment of the debts of the firm of which he is a member, or where he has applied a portion of the joint property to the payment of such debts, there the creditors of that firm may avail themselves of this lien, and work out their equities through him. Counsel on both sides have referred to cases, where that principle is sanctioned and enforced. So that, if the understanding of *Joyce* was that his interest in the store and lot should be applied to the discharge of the debts of the firm of Dore & Co. to the bank, then, since that debt has been paid, he may insist that this application shall be made of it, and the creditors of that

firm may work out their equity through him by the aid of this equitable doctrine. It seems to us that this is as far as a court of equity will go in the distribution of this property, upon the facts appearing in evidence.

The court below, however, held that this conveyance to *Judge Wetherby* was fraudulent and void as to the creditors of the firm of Dore & Co. That firm was composed of *Dore, Dwyer* and *Joyce.* It commenced business in July, 1866, succeeding the firm of Dore & Dwyer, which had previously been doing a mercantile business at Hudson, and which owed the First National Bank a debt of about $1,700. It appears that *Joyce* contributed little or no means to the capital of the firm, though the fact is established that he paid a small amount to purchase the lot upon which the store was erected. The store was erected sometime during the summer and fall of 1866, and the lot was principally paid for, and the building was mostly, if not entirely, paid for out of the means of the old firm of Dore & Dwyer. It is probable that the means of Dore & Co., to a small extent, were contributed to pay for work and material used in the erection of the store. The court below held that the legal title to the store and lot was in *Dore, Dwyer* and *Joyce* as tenants in common; but that, as they were purchased with partnership funds for partnership purposes, each partner held his interest in trust for the company until the accounts were settled and partnership debts were paid. And further, because the firm of Dore & Co. were in embarrassed circumstances and unable to meet their liabilities when the conveyance was made to *Judge Wetherby*, that the title never vested in favor of the creditors of Dore & Dwyer, but that the property must be applied to the discharge of the debts of the new firm. We do not perceive upon what principle this superior equity of the creditors of the new firm rests. We have already remarked that the evidence shows that the store and lot were mostly paid for out of the assets of the old firm. Under such circumstances, equity and justice would seem to require that the pro-

ceeds of the property should be appropriated to the payment of the debts of Dore & Dwyer, at least, so far as the assets of that firm contributed to its acquisition.    Especially should this be so in view of the fact that the partners themselves have charged it with the payment of a valid debt owing by the old firm.    We have already alluded to the equitable doctrine, sanctioned in many cases, which would devote the interest of the partner *Joyce*, to the payment of the debts of the firm of Dore & Co., providing he executed the conveyance with the understanding it should be so applied.    But why should a court of equity go farther than this, and give the creditors of the new firm a preference in the distribution of the property?  In this case, the bank surely acquired a priority at law by secur- ing the mortgage.    Its equity was equal, if it was not in fact superior, to the equities of the new firm, because the mort- gaged property was principally acquired by the assets of Dore & Dwyer.    And as the partners, by common consent, appropri- ated it to the liquidation of the debt due the bank, it should not be taken from the bank and given to the creditors of the new firm.    Such a distribution of the property would be con- trary to the principles of natural justice.    It is giving the cred- itors of Dore & Co. a preference to which they have no equit- able right.    The transfer by the partners to the bank seems to have been made in the utmost good faith.    There is no pretense that there was any intent on the part of any one to defraud other creditors by giving this conveyance.    But the partners, in the management of their own affairs, saw fit to give the bank a mortgage upon a part of the partnership property, and what principle forbids them to make this disposition of it ?  It must be admitted that only a small amount of the assets of the new firm was contributed to the acquisition of this property. It was almost entirely acquired by the assets of the firm of Dore & Dwyer.    And to take it from a creditor of that firm, who by diligence has obtained a transfer of it to secure the payment of a valid debt, and appropriate it entirely to the payment of the

debts of the new firm, seems to us a violation of all principles of equity and justice.

It is said that where a partnership is changed, retaining the assets of the old one, the creditors of the new firm are to be preferred; and the case of *Smith v. Howard*, 20 How. Pr. R., 121, is referred to in support of this position. This case, however, merely decides that the creditors of an old firm have no equity against the partnership property of the old firm in the hands of the new firm or their assignee; and that, while the partners are administering their own affairs, they may prefer one set of creditors in an assignment. And this case very clearly states the rule, that, when partners are thus administering their own affairs, the partnership creditors have no lien upon those funds, and that the equities between the joint and separate creditors of the partnership depend solely upon the equities of the partners themselves, and must be worked out through them. An application of this principle would doubtless require the interest of *Joyce* in the mortgaged property to be applied in the manner he intended when he executed the conveyance to *Judge Wetherby*. Further than this we do not think a court of equity should go in the distribution of that property.

It follows from these views that the judgment of the circuit court must be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*By the Court.*— So ordered.