Smith vs. Ford.

SMITH vs. FORD.

*August 29, 1878 — February 3, 1880.*

EQUITY: TRUSTS: CREDITOR'S SUIT: FORECLOSURE: SALES UNDER INDEPENDENT JUDGMENTS. *(1) Deed of trust construed: its validity and effect. (2) Who bound by decree in equity. (3, 4) Case stated. (5, 6) Foreclosure of mortgage; when persons named defendants cannot be*

Smith vs. Ford.

compelled to litigate therein the validity of the mortgage. (7-9) Sales of land on independent judgments; rights of respective purchasers.

TAX TITLE. (10, 11) Effect of adverse possession of the whole or a part of the land. (12) What lands not taxable separately.

DEED CONSTRUED. (13) When deed of lot on navigable stream does not convey the land under the water.

1. By a deed of trust (purporting to be made in pursuance of an ante-nuptial contract therein recited), A. and his wife, B., assigned and conveyed to X. all the personal and real estate which B. had at the time of her marriage or at the date of the deed, etc., in trust, as to the personalty, to invest the same at his discretion, receive the income thereof during the joint lives of A. and B., and pay the same to B. and her assignees, with power in B., by an instrument in writing, etc., to direct X. to dispose of such personal property according to her appointment, etc., etc.; and in trust as to the realty, to hold it and pay the rents, issues and profits to B. during the joint lives of A. and B., or to such persons as she might appoint, and to convey any part of said realty to such person as she should appoint, etc. If B. should survive A., the trustee was to convey, assign and transfer all the property to her, in the absence of any other appointment by her; and if she should die before A., the trustee was to convey, assign and transfer all the property to such persons as she might have appointed by her last will, or, in default of such appointment, was to assign and transfer the personalty to her next of kin, and convey the realty to her heirs-at-law. Held, that the trust thus created is an active one, and valid under subd. 5, sec. 2081, R. S.; but that the trustee took no beneficial interest thereby in the trust estate.

2. A decree in equity does not ordinarily affect the rights and interests of persons not made parties, but binds those of the actual parties, so far as the court has jurisdiction; and its jurisdiction to bind such parties does not depend upon the presence before it of all persons who are proper parties to the suit.

3. Thus, in a suit against A. and B., the grantor of the trust and the cestui que trust named in said trust deed, to have a mortgage by A. to X. in trust for B. (made after said deed of trust) adjudged fraudulent as against the plaintiffs in that suit, who were judgment creditors of A., and to subject the mortgaged lands to said plaintiffs' judgment against A. (the alleged fraud being that of A. and B., and not of X.), the non-joinder of X. as defendant did not disable the court to take jurisdiction; and its decree that the mortgage was in fraud of A.'s creditors, binds A. and B. and all persons claiming under them subsequently to that suit.

4. A clause in such decree, reserving the rights of the trustee, held to protect

Smith vs. Ford.

only those rights in the property (if any) which he did not hold for the benefit of B.

5. Where, pending such creditor's suit, the trustee brought, in another court, an action to foreclose said mortgage, and made said creditors defendants therein as persons claiming some interest in the premises, which interest was alleged to be subsequent and subject to the mortgage: *Held*, that he could not *compel* them to litigate in that action the question of the validity of such mortgage as against their judgment.

[6. Whether the question of the fraudulent character of a mortgage as against the mortgagor's creditors can *properly* be litigated in a foreclosure suit, and whether, where the creditors are made defendants only under the general allegations above described, a judgment against them will bar them from asserting, *in a suit subsequently commenced*, that their rights are paramount to those of the mortgagee, somewhat considered, but not determined here.]

7. On the non-appearance of such creditors in the foreclosure suit, judgment of foreclosure went against them with other defendants; and the land was bid off by the trustee, X., at the foreclosure sale. A decree being afterwards rendered in favor of the plaintiffs in said creditor's suit, the same lands were sold to F. on their judgment against A. *Held*, that F. acquired by such sale the whole interest of A. and B., and, if X. took the legal title by purchase at the foreclosure sale, he holds it in trust for F.

8. If X., by the trust deed to him, had taken power to dispose of the property at his own discretion, one who, pending said creditor's suit, and after the foreclosure sale, took from him a deed of the lands in question, must at least have shown, as against F., that he took his conveyance in good faith, for value, without knowledge of the rights of A.'s creditors.

9. In this case, however, X. having taken, by the terms of the trust deed, no power of disposition except at the direction of the *cestui que trust*, one purchasing from him pending the creditor's suit against A. and B. was bound to take notice of that suit, and could not acquire title under a foreclosure of the mortgage therein adjudged void.

10. Under the general law, if any person other than the grantee in a tax deed of land, or one claiming under him, actually occupies the land during the three years next after the recording of the tax deed, such grantee loses all title under the deed; and under the charter of the city of Janesville, such a grantee loses title, under like circumstances, after the expiration of *one* year from the recording of the deed.

11. If the grantee in the tax deed has peaceable possession of a *part* only of the premises during the period limited, he acquires an indefeasible title to *that part*, but not to the remainder, which is adversely possessed.

[12. Where a raceway (into which the waters of a river were turned by a

dam), and a roadway connected therewith, were constructed for the sole benefit of persons owning lots abutting upon them, *it seems* that persons purchasing such lots with the right of drawing water from the raceway would take the land under the race and roadway, opposite their lots; and that such lands could not be assessed and taxed separately from such lots. But the question is not here decided.]

13. The original owners of lots on a navigable stream (whose lots on each side extended, by the law of this state, to the thread of the stream), built, under a grant of franchises from the state, a dam for hydraulic purposes across said stream, abutting at each end upon their lots, and sold and leased the right to use the water from the dam; and the grantees of such rights, their heirs and assigns, covenanted to contribute to the maintenance of the dam in proportion to the amount of water so purchased, and took the right to maintain such dam forever; but the deed conveyed no other interest in said abutting lots. Afterwards such original owners conveyed to another person the lot upon which the dam abutted at one end, by a general description according to its number, for a price very greatly disproportioned to that at which the dam and water-power were valued; and thereafter, with the knowledge and acquiescence of the grantee of such lot, continued to sell and lease rights to use the water from the dam. *Held,* upon this evidence, that there was *a severance of the ownership* of the lands upon the bank and those under the stream, and that the deed of such abutting lot was designed to convey, and did convey, only the land upon the bank.

RYAN, C. J., and ORTON, J., dissented from the judgment.

APPEAL from the Circuit Court for *Rock* County.

Action to quiet title to land. Plaintiff appealed from the judgment. The case is thus stated by Mr. Justice TAYLOR:

"This action is brought to quiet the title to certain real estate situate in the city of Janesville.

"The plaintiff claims title to the lands by virtue of a deed of conveyance from Charles D. Mead, trustee of Ann M. C. Smith, wife of A. Hyatt Smith, and mother of the plaintiff.

"The defendant claims title to the same lands by virtue of a sale made under and by virtue of a decree of the United States circuit court for the eastern district of Wisconsin.

"Both parties claim through A. Hyatt Smith as the common source of their title.

" The plaintiff's title is derived through a mortgage executed by A. Hyatt Smith to the trustee, Mead, bearing date the 10th day of June, 1854, and purporting to be given to secure the payment of $95,000, which, it is claimed, was due to such trustee from the said Smith. This mortgage was foreclosed in the circuit court for Rock county, and the lands sold under the judgment therein were bid off by the trustee, Mead; and afterwards the same were conveyed by said Mead, as trustee, to the plaintiff, by deed duly executed by the trustee by his attorney in fact, A. Hyatt Smith, and also personally by Ann M. C. Smith and A. Hyatt Smith. The deed on the foreclosure judgment and sale was dated September 15, 1859, and the sale was confirmed November 28, 1859. The deed from the trustee and Ann M. C. Smith and A. Hyatt Smith to the plaintiff is dated February 28, 1873.

" The deed under which the defendant claims is dated March 12, 1875, and was recorded March 30, 1875.

" The foreclosure action was commenced on the 20th of October, 1858.

" The original action in the circuit court of the United States was commenced on the 19th day of June, 1858.

" The plaintiffs in the action in the United States court were Henry C. Bowen and others, partners of the firm of Bowen, McNamee & Co. The action was a creditor's bill, based upon a judgment in favor of the plaintiffs against A. Hyatt Smith and others, rendered in the United States circuit court January 23, 1857, for an indebtedness which accrued previous to the date of the mortgage of A. Hyatt Smith to the trustee, Mead. Ann M. C. Smith and A. Hyatt Smith were defendants in the creditor's suit, but Mead, the trustee, was not a party thereto. The plaintiffs in the creditor's bill were made defendants in the foreclosure suit, but did not appear or answer, nor were they personally served with process in such action. Ann M. C. Smith was neither plaintiff nor defendant in said foreclosure suit.

"The object of the creditor's bill was to subject the real estate mortgaged by A. Hyatt Smith to the trustee, Mead, to the payment of the judgment of the plaintiffs in said action, and to have such mortgage declared·fraudulent and void as to the creditors of said A. Hyatt Smith. The final judgment rendered in such action declared such mortgage void as to such creditors, and directed the same to be sold to pay the plaintiffs' debt and the costs of the action, and it was sold accordingly.

"In the foreclosure case, the complaint as to the plaintiffs in the creditor's suit alleged, in the usual form, 'that they had, or claimed to have, some interest in or lien upon the said mortgaged premises, or some part thereof, by mortgage, judgment or otherwise, but which lien, if any, was subsequent and subject to the lien of said mortgage;' and the ordinary judgment of foreclosure, and for the sale of the mortgaged premises, was entered.

"The rights of the contestants in this action, so far as it is necessary to investigate the same, depend wholly upon the force and effect of these judgments."

The cause was first argued at the January term, 1878; and by order of the court certain questions were reärgued at the August term, 1878.

For the appellant, there were separate briefs by *Bennett & Sale* and *A. Hyatt Smith*, and oral argument by *Mr. Smith*. They argued, among other things, as follows: 1. That defendant was barred by the foreclosure judgment. (1) The circuit court for Rock county in this state, by which that judgment was rendered, being a court of general jurisdiction, is presumed to have adjudicated the question of its own jurisdiction in the foreclosure suit; as to all the judgment defendants; and such adjudication is conclusive upon them all, in the absence of an appeal. *Jackson v. Astor*, 1 Pinney, 137; *Vilas v. Reynolds*, 6 Wis., 214; *Hungerford v. Cushing*, 8 id., 324; *Grignon's Lessee v. Astor*, 2 Howard, U. S., 319; *Secrist v.*

Smith vs. Ford.

*Green,* 3 Wall., 744; *Adams v. Barnes,* 17 Mass., 365; *Davenport v. Bartlett,* 9 Ala., 179; *Grier v. McLendon,* 7 Ga., 362. (2) The foreclosure judgment, having been rendered by a court of competent jurisdiction, cannot be attacked collaterally in any other court for irregularity. *Mobley v. Mobley,* 9 Ga., 247; *Wiley v. Kelsey,* id., 117; *Bridges v. Nicholson,* 20 id., 90; *Hampson v. Weare,* 4 Iowa, 13; *Kerr v. Leighton,* 2 G. Greene, 196; *Wright v. Marsh,* id., 94; *Barney v. Chittenden,* id., 165; *Patterson v. The State,* id., 492; *McIlvoy v. Speed,* 4 Bibb, 85; *Estep v. Watkins,* 1 Bland, 486; *Ranoul v. Griffie,* 3 Md., 54; *Davis v. Helbig,* 27 id., 452; *Cochran v. Davis,* 20 Ga., 581; *Greenlaw v. Kernahan,* 4 Sneed, 371; *White v. Albertson,* 3 Devereaux' Law, 241; *Williams v. Woodhouse,* id., 257; *Lyles v. Brown,* Harper, 31; *Sutherland v. DeLeon,* 1 Texas, 250; *Perryman v. The State,* 8 Mo., 208; *Billings v. Russell,* 23 Pa. St., 189; *Moore v. Robison,* 6 Ohio St., 302; *Cochran v. Loring,* 17 Ohio, 409; *Newman v. Cincinnati,* 18 id., 323; *Obert v. Hammel,* 18 N. J. Law (3 Har.), 73; *Simpson v. Hart,* 1 Johns. Ch., 91; *Murray v. Murray,* 5 id., 60; *Wesson v. Chamberlain,* 3 N. Y., 331; *Lampry v. Nudd,* 9 Foster, 299; *White v. Landaff,* 35 N. H., 128; *Banister v. Higginson,* 15 Me., 73; *Woodman v. Smith,* 37 id., 21. (3) If Mead had been made a party to the creditor's suit, a question of conflict of jurisdiction between the two courts over the subject matter of the two suits might have been raised and determined on plea of suit pending, made by Bowen & Co., in the foreclosure suit. But as Mead was not a party to the creditor's bill, his foreclosure could not be interfered with, nor his judgment and sale prevented, except by an issue on the merits. *Elliott v. Peirsoll,* 1 Pet., 340. (4) The conclusive character of the judgment of foreclosure relates to every point which was either expressly or by necessary implication in issue, and which was decided or must necessarily be decided in order to support the decree. *Bank of U. S. v. Beverly,* 1 How., U. S., 134; *Parrish v. Ferris,* 2

Black, 606; *Town v. Lamphere*, 34 Vt., 365; *Church v. Chapin*, 35 id., 223; *Shears v. Dusenbury*, 13 Gray, 292; *Wright v. Butler*, 6 Wend., 284; *Embury v. Conner*, 3 Coms., 522; *Doty v. Brown*, 4 id., 72; *Castle v. Noyes*, 14 N. Y., 329; *Campbell v. Ayres*, 1 Clarke (Iowa), 258; *Board of Supervisors v. Railroad Co.*, 24 Wis., 123–5; *Van Pelt v. Kimball*, 18 id., 362; 1 Greenl. Ev., 534; 2 Smith's L. C., 594, 791, 795, 797, 809, 810. (5) The question of priority of incumbrances may be, and to prevent multiplicity of suits of necessity must be, raised and determined in a foreclosure suit; and this involves the necessity of determining the validity of conflicting incumbrances in such suits. *Clason v. Shepherd*, 6 Wis., 374; 10 id., 356; *Hathaway v. Baldwin*, 17 id., 616; *Pelton v. Farmin*, 18 id., 222; *Palmer v. Yager*, 20 id., 91; *Board of Supervisors v. Railroad Co., supra; Corning v. Smith*, 2 Seld., 84; *Freeman v. Schrœder*, 43 Barb., 618; *Frost v. Koon*, 30 N. Y., 428; *Lewis v. Smith*, 9 id., 502. Upon the question of priority the decree will be held valid, where collaterally called in question, whether the complaint contains a prayer to that effect or not. *Board of Supervisors v. Railroad Co., supra.* (6) After a sale upon foreclosure, the validity of the mortgage cannot again be called in question. *Gest v. Flock*, 2 N. J. Eq., 108; *Lansing v. Gœlet*, 9 Cow., 346. The purchaser at such sale takes the complete title of the mortgagor and mortgagee; and the parties to the foreclosure suit and their privies are estopped from disputing such title. *White v. Evans*, 47 Barb., 179; *Holden v. Sackett*, 12 Abbott Pr., 473; *McGee v. Smith*, 16 N. J. Eq., 462; *Carter v. Walker*, 2 Ohio St., 339; *Finney v. Boyd*, 26 Wis., 366; Tay. Stats., 1701, § 4; Laws of 1869, ch. 40. (7) A purchase under a decree foreclosing a mortgage is not affected by the pendency of a suit to which the mortgagee was not a party. *Fenwick v. Macey*, 2 B. Mon., 469; *Hoyt v. Jones*, 31 Wis., 389. (8) The foreclosure suit was a proceeding *in rem*, and, having been conducted according to the law of this state, is

conclusive as to the condition of the property in suit, and the rights and equities of all persons claiming title thereto under A. Hyatt Smith. Story's Conflict of Laws, §§ 549–52, 591–3; *Thomas v. Lawson*, 21 How., U. S., 331; *Phelps v. Holker*, 1 Dallas, 261; *Bissell v. Briggs*, 9 Mass., 467–9; *Nash v. Church*, 10 Wis., 303. 2. That plaintiff was not bound by the judgment in the creditor's suit. (1) The rights of Mead, under whom plaintiff claims, were expressly reserved by the decree in that suit. (2) Mead not having been a party to that suit, his rights could not have been affected by any form of decree therein. [To this general proposition numerous cases were cited.] (3) A trustee is a necessary party to a suit in regard to the trust property, and the court can take no jurisdiction of the legal title without making him a party. *Phipps v. Tarpley*, 24 Miss., 597; *Marble v. Whaley*, 33 id., 157; *Cassiday v. McDaniel*, 8 B. Mon., 519; *Helm v. Hardin*, 2 id., 231; *Ashton v. Atlantic Bank*, 3 Allen, 217. The *cestui que trusts* are not necessary parties to a suit in equity in which a mortgage for their benefit is brought in question. The trustees, as owners of the legal estate, are the proper parties. R. S. 1858, ch. 84, sec. 16; *New Jersey, etc., Co. v. Ames*, 12 N. J. Eq., 507; *Sill v. Ketchum*, Harr. (Mich.), 423. In *Mead v. Walker*, 15 Wis., 449, this court decided that in a case relating to this trust, Mead is a necessary party. In the absence of the legal owner of the land, the federal court in the creditor's suit had no jurisdiction of the subject matter. *Hoyt v. Jones*, 31 Wis., 389; *Van Epps v. Van Epps*, 9 Paige, 238; Story's Eq. Pl., § 427.

For the respondent, there were separate briefs by *Cassoday & Carpenter*, his attorneys, and *A. A. Jackson*, of counsel; and also a joint brief and oral argument by Messrs. *Cassoday* and *Jackson*. They contended, among other things, 1. That the decree of the federal court on the creditor's bill was valid and effectual, although the trustee was not a party thereto. (1) The proceedings in that suit were regular under the act of

congress of February 28, 1839 (R. S. of U. S., sec. 737), and
Equity Rules 47-50 of the federal court; and these merely
rendered definite and certain what was before discretionary in
a court of equity.   *Bank v. Stafford*, 12 How., U. S., 327,
341-3; *Elmendorf v. Taylor*, 10 Wheat., 152, 161-8.   The
saving clause in the decree was inserted merely in conformity
with the statute and rules above cited and the practice of the
federal courts.   (2) The rules and statute do not authorize the
court to divest a person of an actual beneficial title in himself,
without making him, or those privy in interest with him, par-
ties; but under them the court may divest the actual parties
of all equitable or legal title or interest in the subject matter
of the suit, if that be within the jurisdiction of the court.
(3) Courts of equity generally require the presence of all per-
sons interested in the property involved in the litigation; but
sometimes they proceed for and against *cestui que trusts* with-
out the trustee who has no beneficial interest in the subject
matter, even where there is no difficulty in obtaining jurisdic-
tion.   *Cestui que trusts*, however, being the persons whose
*beneficial* interest is affected, must always be before the court,
except in very rare instances, where a peculiar trust is created
or some particular statute gives authority to proceed without
them by reason of privity of interests.   In support of this
view, counsel cited and commented at length upon the follow-
ing authorities: 1 Daniell's Ch. Pr., 197-9, 213-14; *Edmeston
v. Lyde*, 1 Paige, 637; *McNab v. Young*, 81 Ill., 11; *James
v. Railroad Co.*, 6 Wall., 752; *Payne v. Hook*, 7 id., 425;
*Batesville Institute v. Kauffman*, 18 id., 151-4; *Bank v.
Seton*, 1 Peters, 299; *Story v. Livingston*, 13 id., 359; *Mal-
low v. Hinde*, 12 Wheat., 193; *Boon's Heirs v. Chiles*, 8
Peters, 532; 10 id., 177; *Harrison v. Urann*, 1 Story C. C.,
64; *West v. Randall*, 2 Mason, 181, 192-3, 195-6; *Joy v.
Wirtz*, 1 Wash. C. C., 517; *Wendell v. Van Renssalaer*, 1
Johns. Ch., 350; *Watson v. Le Row*, 6 Barb., 481; *Comm'rs,
etc., v. Gellatly*, L. R., 3 Ch. Div., 610 (18 Moak, 717); *Mare*

*v. Malachy,* 1 Myl. & Craig, 559; *Walworth, etc., v. Holt,* 4 id., 619; *Richardson v. Hastings,* 7 Beav., 301, 323; *Holland v. Baker,* 3 Hare, 68; *Kirk v. Clark,* Finch's Prec., 275; *Head v. Ld. Teynham,* 1 Cox, 57; *Cockburn v. Thompson,* 16 Ves., 326, 329; *Supervisors v. M. Pt. Railroad Co.,* 24 Wis., 93, 131–4; *West v. Sanders,* 1 Marsh., 110.  2. That defendant's rights were not affected by the foreclosure judgment and sale.  (1) Even if the foreclosure suit had been commenced *before* the creditor's suit, the decree in the former would not have barred the plaintiffs in the latter of the rights asserted therein.  The object and effect of a foreclosure suit is merely to destroy the *equity of redemption,* and to vest in the purchaser at the sale the title which the mortgagor had at the time of the execution of the mortgage.  2 Washb. R. P., 219 et seq., 507; Harris, J., in *Holcomb v. Holcomb,* 2 Barb., 23; Parker, C. J., in *Penniman v. Hollis,* 13 Mass., 431.  The only allegation against Bowen, McNamee & Co. in the suit here in question was, that they had or claimed some interest in or lien upon the premises, which lien, if any, was *subsequent and subject* to the lien of the mortgage there in suit.  If they had filed an answer setting up what was contained in their creditor's bill, such answer would have been in no way responsive to the complaint, but a substantive cause of action by them against Mead as trustee, based on facts *dehors* the complaint, note and mortgage.  They were not obliged to set up such a cause of action, nor would Mead have been obliged to submit to such a proposed controversy, touching an alleged right *paramount* to the mortgage.  If a defendant in a foreclosure suit claims no right or equity of *redemption,* subsequent to the mortgage, he should either disclaim or decline to answer.  *Strobe v. Downer,* 13 Wis., 11, 14–16; *Pelton v. Farmin,* 18 id., 222, 239; *Roberts v. Wood,* 38 id., 60, 68; *Holcomb v. Holcomb,* 2 Barb., 20; *Corning v. Smith,* 6 N. Y., 82, 84; *Lewis v. Smith,* 9 id., 502, 514.  Moreover, Mrs. Smith was not a party to the foreclosure, but was an essential party to the

creditor's suit; and for this reason also the issues involved in the latter could not be tried in the foreclosure suit. Again, the foreclosure by Mead, and the sale to him, as trustee, changed the nature of the trust property from personal to real, but did not sever the trust relation or give any beneficial interest; and plaintiff stands in no better position than Mead did after the sale, there being no evidence that he paid any consideration, and he being presumed, as the son of Mr. and Mrs. Smith, to know the condition of the property and title. (2) The foreclosure suit having been commenced after the time when the federal court acquired jurisdiction of the subject of litigation and the parties in the creditor's suit, such parties could lose nothing by not appearing in the foreclosure suit. *Wallace v. McConnell*, 13 Pet., 146; *Campbell v. Emerson*, 2 McLean, 30, 32-3; *Greenwood v. Rector*, Hempst., 708; *Smith v. M 'Iver*, 9 Wheat., 532, 535-6; *Gaylord v. Railroad Co.*, 6 Biss., 286, 290-293; *Union Trust Co. v. Railroad Co.*, id., 197; *Wood v. Lake*, 13 Wis., 84. 3. That plaintiff had no such title as could be clouded by the decree of the federal court and the sale made thereon. "Where one party has acquired the legal right to property to which another has the better right, a court of equity will convert him into a trustee of the true owner, and compel him to convey the legal title." *Meader v. Norton*, 11 Wall., 442, 458; *Stark v. Starrs*, 6 id., 419; *Johnson v. Towsley*, 13 id., 72, 85; *Gibson v. Chouteau*, id., 92, 102; *Carpentier v. Montgomery*, id., 480, 497; *Edmeston v. Lyde*, 1 Paige, 640-41; *Van Epps v. Van Epps*, 9 id., 237; Hill on Trustees, 222. In a court of equity, against a plaintiff claiming that defendant's title is a cloud, an equitable defense is just as good as a legal defense. *Torrent v. Muskegon Booming Co.*, 22 Mich., 21.

The following opinion was filed September 2, 1879.

TAYLOR, J. On the part of the plaintiff's counsel it is contended, that as the trustee, Mead, was not made a party to the

creditor's suit, his right as mortgagee was in no way affected by the judgment declaring said mortgage fraudulent and void; and that, by virtue of the foreclosure suit and sale therein, the legal title became vested in him, subject to the trusts declared in the deed of trust between A. Hyatt Smith and wife and said trustee. It is claimed —

1. That the judgment in the creditor's suit is void, not only as to Charles D. Mead, but as to Ann M. C. Smith and A. Hyatt Smith, the *cestui que trust* and the grantor of the trust estate, because the trustee was not a party to that action.

2. That if the judgment is not void as to the *cestui que trust* and the grantor of the trust estate, it can have no further effect than to transfer to the purchaser under the sale in that action the rights of the *cestui que trust*, Ann M. C. Smith, and any rights which A. Hyatt Smith had in the equity of redemption.

3. That although the plaintiff purchased the real estate in question *pendente lite*, he is not chargeable with notice of the rights of the plaintiffs in the creditor's action, for the reason that his grantor, the trustee, was not a party thereto, and did not claim to hold by purchase from any party thereto subsequent to the commencement thereof.

4. That in consequence thereof, admitting that the defendant has acquired the rights of the *cestui que trust*, Ann M. C. Smith, such right can only attach to the property in the hands of the trustee at the date of the entry of the judgment, or at the time of actual notice thereof given to such trustee.

5. That the sale to the plaintiff having been made long before the entry of the judgment in the creditor's suit, his title thereby became perfect, and was entirely unaffected by the entry of judgment and sale thereafter made; and

6. That the judgment in the foreclosure action was an absolute bar against the plaintiffs in the creditor's suit alleging that the mortgage given by Smith to Mead was fraudulent and void as to them; and by it they are estopped from claiming

any benefit of the judgment in the circuit court of the United States.

On the part of the counsel for the defendant it is claimed:

1. That as the trustee had no beneficial interest in the trust estate, the circuit court of the United States had the power, in an action against the grantor of the trust estate and the *cestui que trust*, to declare such trust fraudulent and void, not only against the grantor of the trust estate and the *cestui que trust*, but also against the trustee.

2. That if the judgment in the circuit court did not and could not divest the trustee of any title or interest he had in the trust estate, yet it had the power to divest all the beneficial interest the *cestui que trust* and the grantor of the trust had therein, and that the purchaser under the judgment in that action acquired all the right, estate and interest both of Ann M. C. Smith and A. Hyatt Smith in and to the real estate in controversy, and the trustee must, after such sale under that judgment, hold the same for the benefit of such purchaser.

3. That the plaintiff, having purchased *pendente lite*, took the estate subject to the rights of defendant.

4. That the plaintiffs in the action in the circuit court are not bound by the judgment in the foreclosure action instituted by the trustee, and the judgment and sale therein: *first,* because, although made defendants therein, they were not bound to litigate the question in that action whether the mortgage was fraudulent and void as to them; that such litigation is a litigation of a question of title adverse and paramount to the title claimed under the mortgage, and is not properly triable therein; and *second,* because, having already commenced an action in the circuit court of the United States against the real parties in interest, for the express purpose of litigating the question as to the fraudulent character of the mortgage sought to be foreclosed in the action in the circuit court for Rock county, they had the right to have that question

litigated in the court where they had first commenced their action, and that neither the *cestui que trust*, Ann M. C. Smith, nor A. Hyatt Smith, the maker of the trust, nor the trustee representing them, could, by commencing an action in some other court, compel them to litigate that question in such other court.

In order to fully comprehend the effect which must be given to the two judgments above mentioned, it will be necessary to state briefly the nature of the trust deed under which it is claimed the lands were held by Mead, the trustee therein named, as well as the alleged nature of the alleged indebtedness to secure the payment of which A. Hyatt Smith gave the mortgage to such trustee.

The trust deed under which it is claimed that Mead held the mortgage, and acquired the legal title to the lands therein described by the foreclosure thereof, was apparently executed the 26th day of January, 1841, by A. Hyatt Smith, as party of the first part, Ann M. C. Smith, party of the second part, and Charles D. Mead, party of the third part. It recites at length an ante-nuptial contract between A. Hyatt Smith and Ann Margaret C. Kelly, which states that the parties were about to contract marriage; that Ann M. C. Kelly was the owner of considerable personal and real estate, and that A. Hyatt Smith contracts and agrees with her that notwithstanding their marriage she shall have the entire control of her separate property, not subject to the debts of said Smith, nor in any way subject to his control, and that he will, after their marriage, execute and deliver all instruments in writing necessary to carry into full effect the true intent and spirit of such agreement. This ante-nuptial contract bears date April 3, 1838. After reciting this contract, in pursuance thereof Smith and wife sell, assign, transfer and set over to the party of the third part, Charles D. Mead, all the personal property, choses in action, etc., which the said party of the second part, Ann M. C. Smith, had at the time of her marriage, or was

entitled to, or had since or should thereafter become entitled to by reason of such personal property or estate, in trust to invest the same in his discretion, and to receive the interest and income thereof during the joint lives of the said parties of the first and second parts, and to pay the same to the said party of the second part and her assigns, notwithstanding her coverture, for her sole and separate use, during the joint lives of the parties of the first and second parts, with power to the said party of the second part, by an instrument in writing under her hand and seal, to appoint and direct the said party of the third part to dispose of, sell, assign and transfer the said personal property, etc., or any part thereof, according to such appointment of the said party of the second part; and if said party of the second part should survive the said party of the first part, and in default of any appointment by the said party of the second part, then, upon trust to pay and transfer to the said party of the second part all of said personal property, etc.; but in case the said party of the second part shall die in the life-time of the said party of the first part, then, in trust, after the decease of the said party of the second part, to assign and transfer the said personal property, etc., to such person or persons, and in such shares, as the said party of the second part shall, notwithstanding her coverture, by her last will and testament limit or appoint, and in default thereof and of any appointment as aforesaid, then to the next of kin of the said party of the second part.

The deed then goes on to grant to said Mead, as trustee, all the real estate which Ann M. C. Smith had at the time of her marriage, and at the time of the making of such deed, in trust to hold the same and pay the rents, issues and profits thereof to the party of the second part during the joint lives of the parties of the first and second parts, or to such person or persons as she may in writing appoint, for her sole and separate use, and upon the further trust to convey the said real estate, and any and every part thereof, to such person or

persons and for such estates as the said party of the second part shall at any time appoint by deed or any instrument in writing sufficient to pass real estate, and upon the death of the party of the first part, if the party of the second part shall survive, and in default of such appointment, then to convey the same to the party of the second part and her heirs; but in case the said party of the second part should die in the life-time of the party of the first part, then to convey the said real estate, and any and every part thereof, to such person or persons and for such estates as the said party of the second part, by her last will and testament in writing, or by any instrument in writing in the nature of or purporting to be her last will and testament, shall direct and appoint; and in default of any appointment, then to the heirs-at-law of the said party of the second part, in fee simple forever. The third party, Mead, covenants with the party of the first part to perform those things that are of him required in the just discharge of the trusts therein declared, and accepts and undertakes the execution thereof.

The mortgage from A. Hyatt Smith to Mead is simply a mortgage to Mead as trustee of the separate estate of Ann M. C. Smith, and does not state upon what, if any, trust the mortgage is to be held; but it is alleged that the indebtedness which the mortgage secured was an indebtedness from Smith to Mead as trustee of the separate estate of Ann M. C. Smith.

We come now to the consideration of the effect which must be given to the two judgments under which the parties claim the real estate. We will first consider what title, if any, passed to the defendant by virtue of his purchase at the sale made in pursuance of the judgment of the circuit court of the United States. The plaintiff claims that no title of any kind, either legal or equitable, passed by such sale. The only reason alleged is, that Charles D. Mead, in whom it is claimed the legal title to the real estate sold was vested at the time of such sale, was not a party to such action, and therefore no

questions as to such legal title, or any other title, could be adjudicated in that action.   It is broadly claimed that, as such fact was made to appear in said action, it was a usurpation on the part of such court to proceed with the action and make any final adjudication therein, affecting the title to such real estate, without making such trustee a party thereto.   We cannot hold that the absence of the trustee as a party to such action can have the effect to deprive that court of all power to pass upon the rights of the parties properly before it in and to the real estate, because the legal title was held by Mead, who was not a party.   If the rights of the parties before the circuit court of the United States, in and to such real estate, were of such a nature that that court would have had the power to divest them thereof, and direct them to be sold and transferred for the purpose of satisfying the claims of the plaintiffs in such action, had the trustee holding the real estate been a party defendant with them, then it would seem that there could be no want of power to do the same thing in the absence of such trustee, although there might be a want of legal propriety in doing so; especially in a case like the present, where the ground upon which the court proceeded to divest the parties before it of the right claimed by them in the real estate was, that, as to the plaintiffs, the transfer of the legal title to the trustee was fraudulent and void.

The fact that the legal title to real estate is vested in a trustee, is certainly no reason why the creditors of the *cestui que trust* should not be permitted to proceed, in the absence of the trustee, to subject the interest of such *cestui que trust* to the payment of their debts, if they do not attack the validity of the trust itself, especially when the trustee has in fact no beneficial interest in the trust estate; and there does not appear to be any very serious objection to proceeding without the trustee, when the alleged interest of the grantor of the trust property and of the *cestui que trust* are sought to be subjected to the payment of the debts of the grantor of the

trust property on the ground of the fraudulent nature of the grant to the trustee, the fraud alleged being the fraud of the grantor and the *cestui que trust*, and not of the trustee.

There are but two apparent reasons why, in such case, the trustee holding the legal title should be a party to the proceeding: *first*, that, as the parties plaintiff insist that such legal title is held for their benefit, he ought to be present so that the court could make an end of litigation by compelling the trustee to convey to the plaintiff, or divest his legal title by a judicial sale under the judgment; and *second*, that he ought to be made a party so as to enable him to protect the rights of his *cestui que trust*. The second reason can have but little weight when the *cestui que trust* is of full age, and is a party.

In the decision of this case we do not deem it necessary to determine whether the legal estate ever passed, in fact, to the trustee, and shall, for the purposes of the decision, admit that the legal estate passed to the trustee by virtue of the sale under the foreclosure judgment, and that, as between himself and A. M. C. Smith, he held the same subject to the trust declared in the deed of trust above referred to. By an examination of the provisions of such trust deed, it will be seen that the trustee had really no beneficial interest in the trust estate, but held the same absolutely subject to the will of the *cestui que trust*. The whole beneficial estate was in her, and at her death, unless disposed of during her life-time by appointment or will, as provided for in the deed, it went absolutely to her heirs. We do not, however, hold that it was a mere naked trust, so that, under the provisions of section 2075, R. S. 1878, the legal estate vested in the *cestui que trust*. We think the case of *Goodrich v. Milwaukee*, 24 Wis., 42, very clearly shows that the trust in this case was an active trust, and valid under subdivision 5 of section 2081, R. S. 1878.

After giving the case as full consideration as is consistent with our other duties, we have concluded:

1. That the circuit court of the United States had jurisdiction to proceed with the action, in the absence of the trustee, Mead, as a party.

2. That it had jurisdiction over A. Hyatt Smith, the grantor of the trust estate, and Ann M. C. Smith, the person for whose sole benefit the trust was created.

3. That the court had the power to determine the question whether the trust estate was conveyed in fraud of the creditors of the grantor, Smith.

4. That, the court having adjudged that the trust was void as to the creditors of Smith, and that the real estate was subject to the payment of the demands of such creditors, it had the power to direct the sale of the same for the payment of such debts; and that, by virtue of the sale under the decree of said court, the purchaser took all the rights, interest and estate which A. Hyatt Smith and Ann M. C. Smith had in said real estate at the time of the execution of the mortgage by Smith to the trustee, Mead, and they are barred of all claim to such estate or any interest therein.

5. That, the foreclosure action having been commenced after the action was commenced in the circuit court of the United States, the judgment and proceedings therein did not bar the plaintiffs in that action from alleging the fraudulent nature of the mortgage to the trustee.

6. That, as the trustee was not a party to the action in the circuit court of the United States, he had the right to foreclose the mortgage; and that, by virtue of such foreclosure and sale, the legal title became vested in him.

7. That there is no evidence in the case showing that the plaintiff is a *bona fide* purchaser of the legal estate from the trustee, without notice of the rights of the defendant, so as to relieve the estate in his hands from the equitable rights of the defendant therein.

The absence of proper parties to an equitable action is not a jurisdictional defect which renders the proceedings and judg-

ment in the action void as between the persons who are parties to the same, so that they can impeach the judgment in a collateral proceeding. The judgment in such case does not ordinarily affect the rights of the persons not made parties, and they are not bound by the judgment; but as to those persons who were parties, their rights and interests are bound by the judgment, so far as the court has jurisdiction to pass upon the same; and the jurisdiction of a court of equity to pass upon and bind the rights and interest of a party before it does not depend upon the question whether all the proper parties are before it, but upon the nature of the rights of the parties before it, and upon which the court passes judgment.

This, we think, is fully established by the authorities cited by the very able counsel for the respondent, whose industry in the collection of the precedents on this point renders it unnecessary for the court to do more than refer to the authorities collected.

In the case of *The Supervisors v. Mineral Point Railroad Co.*, 24 Wis., 93, 131, this court fully recognized the right of the court to proceed with a litigation and adjudicate upon the rights of the parties before the court to either real or personal property, in the absence of a party or parties holding the legal title to such property in trust for the parties so litigating, and the propriety of its doing so. Chief Justice DIXON, in delivering the opinion in that case, says:

"But, because a party not served with process, and not before the court, may collaterally dispute the decree and deny its validity, it does not, we think, follow that other parties who were served, and over whose persons the court in fact acquired jurisdiction, may do the same thing; nor do we know of a decided case where such a doctrine has been held.

" The *force* or efficacy of a decree, as between *the parties before the court*, does not depend upon the fact that there may be other persons, proper or necessary parties, who are not

before it.   The absence of such persons is not a defect *involving the jurisdiction* or power of the court over the parties who are present, or over the subject matter of the suit so far as those parties may be concerned.   The court may, nevertheless, proceed to a decree, and such decree, though rendered in violation of the rules and practice of equity in such cases, is not void as between the parties to it.   It is irregular, but not void.   It *binds the parties* to it until set aside or reversed in some direct proceeding for that purpose.   And the reason of this is obvious.   Jurisdiction *exists* wherever there is a *suit*, the *subject matter* of which is *cognizable* in a court of chancery, and parties are before the court *whose rights* in relation to such subject matter the court may adjudicate; and the *effect* of such adjudication between the parties, until reversed or set aside, does not depend upon the fact that the power of the court may have been erroneously exercised in making it. If there be necessary parties wanting, whose absence may render the adjudication fruitless or ineffectual, because the rights of such parties cannot be determined, that may be good cause for arresting the proceedings or dismissing the suit, but it does not deprive the court of power to proceed.   .  .  .  . Each case must still be determined, to a considerable extent, upon its own peculiar facts and circumstances; the object of all rules upon the subject being in accordance with the cherished principle in equity, that the adjudication may be as complete and conclusive as possible.   If, in a doubtful case, the court should err in this respect, it would be a most extraordinary conclusion that it had lost all jurisdiction, and its decree was of no effect.   And, if it would not be so in a doubtful case, then it can make no difference with the application of the principle that the question presented was a plain one and easy to be decided.   *The jurisdiction of the court cannot be determined by the magnitude of the error*.   Again, there is a class of cases in which the bringing in of *additional parties* may be said to rest, in a great measure, in the *sound discre-*

*tion* of the court. Should the court abuse its discretion and commit great error in such case would that oust the jurisdiction? We say, clearly not. . . . The rule to be gathered from all the authorities may, in few words, be stated to be, that in no case does the jurisdiction of the court over the subject matter and parties properly before it depend, nor can it be made to depend, on the absence of other parties, however the right of such other parties may be complicated by the decree, or however necessary it may be that they should be brought in, in order that a complete and final determination of the controversy may be had."

In the case of *Day v. Wetherby*, 29 Wis., 363–370, this court approves of the opinion in the 24 Wis., above cited, and expressly declares that where the trustee holds the legal title in trust solely for the benefit of third persons, who have the sole equitable interest, in an action to have such property so held in trust applied to a different purpose than that expressed in the trust, such third persons are the real parties in interest, and necessary parties to the action.

The case of *Boon's Heirs v. Chiles*, 8 Peters, 532, and 10 Peters, 177, was a case very much in point, and shows conclusively that a court of equity will adjudicate upon the equitable interests of parties claiming title to real estate, in the absence of the person holding the legal title. In that case, one William Hay, in whom the legal title to the real estate was vested, made, in substance, a contract to sell the same to one George Boon. George Boon sold his interest in the contract of purchase to one Thomas Boon. Thomas Boon made a conditional sale to one Hezekiah Boon, which it was conceded by the parties was void. Chiles claimed as purchaser from Hezekiah Boon, and claimed to be a purchaser in good faith. The action was commenced by Thomas Boon against Chiles, and after Thomas Boon's death the action was continued in the name of his heirs. The object of the action was to compel Chiles to release to the plaintiffs all the pre-

tended title he had to the lands in question, by reason of his pretended purchase from Hezekiah Boon. Other relief was asked, which it is not material to state here. Chiles objected to the jurisdiction of the court, on the ground that the heirs of Hay, who had died, were not all parties to the bill, and that some of them resided out of the jurisdiction of the circuit court for the district of Kentucky, where the action was commenced, and that they could not, therefore, be made parties to such action; and it was urged that the court could not proceed with the case in the absence of such parties. It was held by the supreme court of the United States, that, as both parties claimed under the vendee of Hay, their rights as between themselves could be settled and adjudicated by the court without the presence of Hay or his heirs. In this case the late learned Chief Justice MARSHALL, who delivered the opinion, says: "It is clear that the heirs of Hay can have no interest in this controversy between the heirs of Thomas Boon and William Chiles, and need not be made parties but for the purpose of obtaining a conveyance of the legal title, if it still remains in them. The court may very properly decree as between Boon's heirs and Chiles, although the heirs of Hay should not be parties. Chiles is in possession of a contract for the sale of Boon's equitable title, which Boon alleged to be totally invalid, and to have been fraudulently acquired. His heirs now allege it. Chiles maintains that the sale from Thomas to Hezekiah Boon was absolute and *bona fide*, and that the whole equitable interest of Thomas Boon is legally and justly vested in him. The heirs of Thomas Boon may certainly come into a court of equity and ask its decree to compel William Chiles to surrender this contract, if it has indeed become a nullity, or to enjoin him perpetually from the use of it, or to convey any legal title he may have acquired under color of it to those who possess the real equitable right. Should the court be unable to decree against Hay's heirs, it may decree as between Boon's heirs and William Chiles, so far as

respects the title of Chiles under Boon, if the bill be so framed as to grant that relief."

In *Edmeston v. Lyde*, 1 Paige, 637, which was a creditor's bill to reach the equitable assets in the hands of the judgment debtor, the answer of the judgment debtor showed that he was insolvent, and that certain real estate which he had owned had been sold under execution upon other judgments, and bid in by one Buckner for his benefit, subject to the lien of such sums as he should from time to time advance for him; and that he had advanced upon the security of such real estate, for him, the sum of $1,400. The judgment debtor held the written acknowledgment of Buckner that he held the property in trust for him as above stated. The question was, whether Buckner was a necessary party to the action, without whose presence the court could not proceed with the case. Chancellor WALWORTH, who delivered the opinion, says: "Neither was Buckner a necessary party. When the property has been fraudulently assigned by the debtor, so that he has no legal or equitable rights as against the assignee, it will be necessary to make the assignee a party to enable the court to reach the property in his hands. A decree against the fraudulent assignor would not, in that case, give any right to the property in the hands of the assignee. But when the debtor still retains the legal or equitable interest in the property, such interest may be conveyed to the complainant or transferred to a receiver, under the decree or order of this court, who can call upon the debtor or *trustee of the defendant* in the same manner as the defendant himself might have done previous to the filing of the bill. As there is no allegation of fraud as to Buckner, if he was made a defendant he would be entitled to the advances which he has made, together with his costs. If all the right of the defendants is sold under a decree in this suit, the purchaser will be entitled to an assignment of the land from Buckner, on paying the amount due. And if he should unreasonably refuse to permit the purchaser to redeem,

he might subject himself to the costs of a suit instituted for that purpose." In this latter case the court, instead of directing the receiver to redeem the property in the hands of the trustee, Buckner, for the benefit of the complainant, directed that the equitable interest of the judgment debtor in the same be sold at public vendue, as was done in the case at bar.

In *McNab v. Young*, 81 Ill., 11, H. had given his notes to Y. for a large sum of money, and executed a trust deed to M., to secure the payment of such notes, and afterwards a part of the sum due thereon had been paid, and an action was commenced in the circuit court of the United States for the state of Illinois, praying that the deed of trust might be declared a mortgage, for the benefit of the *cestui que trust*, and Y., H. and the judgment creditors of H. were made parties, but the trustee, who was a nonresident, was not made a party. A judgment was obtained in favor of the plaintiff, and the real estate described in the trust deed was sold to pay the amount found due to the complainant. In the case of *McNab v. Young, supra*, the plaintiff claimed under H., and the defendants under the sale on said judgment in the circuit court of the United States. The plaintiff in the last case claimed, as the plaintiff does in this, that the proceedings in the circuit court of the United States were void because the trustee, M., was not a party to such action; but the court held otherwise. The late learned Justice BREESE, who delivered the opinion, says: " M. was not a necessary party to the proceeding, being a mere naked trustee, with no real interest in the subject of the controversy. Had the purposes of the trust been accomplished, H. would, without action on his part, have been vested with the legal title, on which he could have maintained ejectment."

The right of a court of equity to proceed against the parties before it, in the absence of another party holding a mere legal title to the property in dispute, in trust for the benefit of the parties before the court, as determined by those cases, is

sustained by an abundance of authority. In cases of this nature it is a matter of discretion, to some extent, with the court in which the action is pending, whether the trustees shall be made a party to the action; and in cases where such party holding the naked legal title is within the jurisdiction of the court, the courts usually require him to be made a party, so that he may be compelled to convey to the party who succeeds in the action; but when such trustee resides out of the jurisdiction of the court in which the action is pending, it is customary to proceed with the action without his presence, and settle the rights of the parties before the court, leaving the successful party to proceed afterwards, if necessary, against the trustee, to compel him to convey the legal title. *Elmendorf v. Taylor*, 10 Wheaton, 152, 156, 167; *Bank v. Stafford*, 12 How., 327, 341; *Watson v. Le Row*, 6 Barb., 481. This last case presented the same questions presented in this, the only difference being that the contending parties were both creditors of the alleged fraudulent grantor. The plaintiff claimed to have his judgment satisfied out of the equitable interest which the judgment debtor had in a parcel of real estate which he had purchased and paid for, but which, by his direction, had been conveyed to trustees in trust for his wife. In that action the plaintiff had made the administrators of the judgment debtor, the heirs-at-law of his wife, and the trustees, defendants; also the defendant Harris, who claimed to own said lands by virtue of a sale and deed made in a former creditor's suit against the same judgment debtor. It appeared by the answer of Harris, that the former creditor's action was against the same judgment debtor, but that neither the trustees nor the judgment debtor's wife were made parties in said action. It was urged by the plaintiff in the second creditor's action, as it is now urged in this, that Harris acquired no interest in the real estate in question by reason of his purchase under the sale made in pursuance of the judgment in the former creditor's action, because neither the trustees nor

the wife, who was the *cestui que trust*, were parties to such action. The court, however, held that Harris had such an interest in the real estate, by virtue of his purchase, as entitled him to defend the action; and as it was alleged by the plaintiffs in the latter action that the conveyance by the judgment debtor of the real estate to the trustees, for the benefit of his wife, was made with intent to defraud his creditors and the heirs of his wife, and the trustees had admitted such allegations of fraudulent intent by suffering the bill to be taken as confessed against them, the court ordered the action to be dismissed as to Harris, upon the ground that he showed a better title to the real estate than the plaintiff could obtain by virtue of his proceedings in that action. In the opinion in that case, Justice PAIGE, who delivered the opinion of the court, says:

" The conveyance out of the way [meaning the conveyance to the trustees], Bigelow's [the judgment debtor's] interest in the premises in question was an equitable interest, derived under his contract of purchase with Marcy and Clark [the persons of whom he purchased the lands]. This equitable interest was reached by the creditor's bill of Watson and Watson against Bigelow, and was transferred to the receiver in that action by the assignment of Bigelow, and sold and conveyed by the receiver to Harris; and, Harris having thus acquired all the interest of Bigelow under the contract, he has a right to call upon Marcy and Clark to convey to him the legal title. The heirs of Mrs. Bigelow cannot now gainsay this right, having, by allowing the bill in this suit to be taken as confessed against them, admitted that Bigelow caused the conveyance to the trustees for the benefit of Mrs. Bigelow to be made with intent to defraud his creditors. By considering the conveyance in trust for Mrs. Bigelow as fraudulent and void, it may be objected that Mrs. Bigelow and the trustees ought to have been made parties to the creditor's bill, to enable the court to reach the interest of Bigelow in the land in

Smith vs. Ford.

question. But I cannot see why the decree in the creditor's suit, the assignment to the receiver, and the sale to Harris, were not as effectual in passing to the latter the interest of Bigelow, under his contract of purchase, as a sale by a judgment creditor of a fraudulent grantor, under a judgment and execution at law, is to pass the title to the purchaser of the land fraudulently conveyed.

"I cannot perceive how it is necessary to make Mrs. Bigelow a party to a creditor's suit, to enable the court to reach the interest of Bigelow in the land in question. She was undoubtedly a necessary party to enable the court to reach her interest, if she had any. Why cannot Harris file his complaint against Marcy and Clark, and the heirs-at-law of Mrs. Bigelow, and compel the former to convey to him the legal title, and the latter to deliver up the possession? I see no objection to such a proceeding. The heirs-at-law may, perhaps, in the suit against them by Harris, be entitled to controvert the allegation that the conveyance in trust for Mrs. Bigelow was fraudulent, or the allegation that a trust resulted to Bigelow in favor of his creditors, unless they are estopped from doing so by suffering the bill in the present suit to be taken as confessed against them. But whatever may be the result in regard to the right and interest of Harris under the receiver's deed, to be deduced from the assumption that the conveyance in trust for Mrs. Bigelow was fraudulent and void as against creditors, I have no doubt, upon the ground that a trust resulted to Bigelow in favor of his creditors, which must be assumed from the decision in *Guthrie v. Gardner*, 19 Wend., 414, and which is alleged by the plaintiff in his bill, and cannot, therefore, be denied by him, whether that trust was a mere equitable interest in Bigelow for the benefit of his creditors, or was turned into a legal estate for the benefit of such creditors, that Harris is entitled under his deed from the receiver, either in law or equity, to the premises in question."

This decision was concurred in by Justices WILLARD and HAND.

In *Holland v. Baker*, 3 Hare, 68, the learned vice-chancellor says: "Trustees are not themselves owners of the property; they are in a sense agents for the owners in executing the trusts, but they are not constituted agents for the purpose of defending the owners against the adverse claims of third parties in this court. It is the duty of the trustees in such a situation to object that the owners of the estate are not before the court; and I think it is the right of the trustee in that case to insist that the *onus* of resisting adverse claims shall be thrown upon the *cestui que trusts*, and not on themselves. . . . I have said that it is the duty of the trustees to require that all their *cestui que trusts* should be before the court. If the court is to dispense with the presence of any number of them in order to avoid the inconvenience of bringing so large a body of creditors before the court, it seems of necessity to follow that the trustees of the property upon which the court is to act should be parties to that record, that they at least might be able to inform the court whether it is sufficiently framed with reference to the interest of the whole of the *cestui que trusts*, by the selection of those who, in the existing state of things, are in a position adequately to represent the interest of the body."

There are some things said in the above case which may seem to be in conflict with the decision in the case of *Kerrison v. Stewart*, 93 U. S., 155, in which it is held that where trustees have, by virtue of the powers conferred upon them, the right to act on behalf of the *cestui que trusts*, and to bind them by their acts, whether done with or without their assent, such *cestui que trusts* are not necessary parties to an action affecting the trust property, and are bound by a judgment rendered in an action against the trustees alone; but when the facts of the two cases are considered, they do not necessarily conflict.

The doctrine of the cases above cited, and from which parts of the opinions have been quoted, is sustained by the cases cited below. *Bank v. Stafford*, 12 How. (U. S.), 327, 341; *Elmendorf v. Taylor*, 10 Wheat., 152–154; *Moody v. Gay*, 15 Gray, 457; *Bank v. Seton*, 1 Peters, 299; *Story v. Livingston*, 13 Peters, 359; *Mallow v. Hinde*, 12 Wheat., 193; *Harrison's Adm'r v. Urann*, 1 Story C. C. R., 64; *West v. Randall*, 2 Mason, 181, 193; *Joy v. Wirtz*, 1 Wash. C. C. R., 517; *Wendell v. Van Rensselaer*, 1 Johns. Ch., 350; *Wood v. Davis*, 18 How. (U. S.), 468; *Shields v. Barrow*, 17 How. (U. S.), 139, 141; *Barney v. Baltimore City*, 6 Wall., 280–290; *Jones v. Andrews*, 10 Wall., 327; *Batesville Institute v. Kauffman*, 18 Wall., 151; *Inbusch v. Farwell*, 1 Black, 566, 571; *Hagan v. Walker*, 14 How. (U. S.), 29, 37; *Clearwater v. Meredith*, 21 How. (U. S.), 489; *Ober v. Gallagher*, 93 U. S., 204; *Mare v. Malachy*, 1 Mylne & Craig, 559; *Richardson v. Hastings*, 7 Beavan, 301; *Cockburn v. Thompson*, 16 Ves. Jr., 326; *Slade v. Rigg*, 3 Hare, 35; *West v. Sanders*, 1 Marshall (Ky.), 110; *Beck v. Burdett*, 1 Paige, 308, 309; Story's Eq. Pl., § 193.

This rule is recognized and adopted as a rule of court in equity cases in the courts of the United States (see Equity Rules 47 and 48, U. S. Cir. Ct.), and is authorized and confirmed by the statutes of the United States. Section 737, R. S. U. S.

Having come to the conclusion that the circuit court of the United States had jurisdiction to proceed in the action in the absence of the trustee, it follows logically that the court had the power to determine whether the trust created by Smith in favor of his wife was created in fraud of his creditors; and the judgment of that court declaring that such trust was created in fraud of such creditors, bars Smith and his wife, and all parties claiming under them subsequent to the commencement of the action, as against the purchaser under the judgment in such action, from setting up any rights under or by

virtue of such trust. As was said in the case of *Watson v. Le Row, supra*, the purchaser under such a judgment would certainly have as good a claim to the property as against the trustee, as though the creditors who were plaintiffs in such action had issued execution upon the judgment and sold the lands in question, and he had purchased them at such sale. In that case there can be no doubt but that the purchaser could have maintained an action of ejectment upon the deed issued upon such sale, and have recovered in such action, provided upon the trial he could establish the fact of the fraudulent nature of the trust estate as to the creditors. See *Sands v. Hildreth*, 14 Johns. R., 493; *Jackson v. Terry*, 13 Johns. R., 471; *Moore v. Munn*, 69 Ill., 591. In the case at bar, it seems to me that if the present defendant and respondent had brought an action of ejectment against the purchaser from the trustee, the present plaintiff, the only question which would be open to litigation would be, whether he had purchased in good faith without notice of the claims of the plaintiffs in such former action, unless it appeared that the trustee had some claim or lien upon such property for money expended in the execution of the trust, or for services as such trustee, which might be paramount to the claim of the plaintiff. The judgment in the United States circuit court having barred all right of the *cestui que trust* to claim any interest under the trust deed as against such plaintiff, the trustee and those claiming under him could not set up the rights of such *cestui que trust* as a foundation of title, unless they brought themselves within the rule which protects purchasers in good faith without notice of the invalidity of the trust.

In the creditor's action, the plaintiffs and the defendant A. M. C. Smith both claimed under the grantor of the trust, A. Hyatt Smith. At the time of the commencement of that action, the legal title to the real estate in controversy was in A. Hyatt Smith, the mortgage to the trustee not having at that time been foreclosed. A. M. C. Smith being a party to

such action, and being the sole person having any interest in the mortgage given to the trustee, she was the proper party to contest with the creditors of the mortgagor the validity of such mortgage. She did contest its validity with such creditors, and judgment was rendered adverse to her right. She is therefore barred from asserting any title to the real estate in question as against those claiming under the judgment in the creditor's action. If she had bought the lands in question upon the foreclosure sale, or if, after the trustee had purchased them at such sale, he had conveyed them to her, there could be no doubt as to the right of the purchaser under the creditor's judgment to recover against her in an action of ejectment, upon the ground that as between them it was *res adjudicata* that the mortgage was fraudulent and void, and no title could therefore be acquired by her under the same. *Macey v. Fenwick*, 9 Dana, 198, 200. As she is barred from asserting any right to the lands in controversy under such mortgage, it seems necessarily to follow that the trustee cannot hold the same, as against a purchaser under the judgment in the creditor's action, for her benefit.

It is claimed by the learned counsel for the appellant, that, notwithstanding it may be held that the title of the trustee is void as to the respondent, yet the appellant's title should be sustained on the ground that he is a purchaser in good faith from the trustee, without notice of the claim of the respondent or those under whom he claims. It is urged that at the time of the purchase by the appellant from the trustee, such trustee had apparently the legal title to the lands in question, so far as such title was disclosed by the records in the county where the lands were situated. The appellant's deed from the trustee was made February 28, 1873. The judgment under which the respondent claims was not entered until July, 1874, and the sale at which he purchased was made in 1875. The creditor's action under which such sale was made was commenced, however, in June, 1858, and was pending and

undetermined in February, 1873, when the respondent took his conveyance. Did the appellant purchase without notice of the claims of the creditors under whom the respondent held his title, and for a valuable consideration? If he did, then, notwithstanding the fact that the court has declared the trust fraudulent and void as to such creditors, his title would be good. We are inclined to hold that he did not purchase in good faith, without notice and for a valuable consideration:

1. Because he must be held to be a purchaser *pendente lite*, and therefore took his title subject to the judgment of the court in the creditor's action, and is bound by such judgment to the same extent as the parties to the action. If the trustee had had the power under the trust deed to sell and convey the trust property, as he might in his discretion see fit, without consulting with or procuring the consent of his *cestui que trust*, it might be insisted with much force that a purchaser from such trustee would not be bound to examine or ascertain whether the interest of the *cestui que trust* was in litigation or not, so long as the trustee was not a party to such litigation. In such case, so long as the parties were contesting only as to the rights and interests of the *cestui que trust*, persons dealing with the trustee might take it for granted that all parties interested in the trust estate were satisfied to let the trustee exercise his discretion in the disposition of the trust property, relying upon his good faith to act for the interest of all parties concerned. In such case, a sale made by the trustee in good faith to a purchaser in good faith would undoubtedly pass the title to the purchaser discharged of the trust, and the consideration paid would be held by the trustee subject to the rights of the parties claiming the proceeds of the trust estate. But in the case at bar, the trustee had no power under his deed of trust to sell the property to any person or persons except as directed in writing by the *cestui que trust*, and all parties dealing with him were, therefore, bound to take notice of that fact. The power to sell was, in fact, reserved by the trust deed to

Smith vs. Ford.

the *cestui que trust,* and not given to the trustee; and, although the mere legal title was in the trustee, the entire equitable estate and title was in the *cestui que trust ( Sparhawk v. Cloon,* 125 Mass., 267), and every purchaser of the trust estate or any part thereof was therefore a purchaser in fact from the *cestui que trust.* The trustee acted more in the nature of an agent of the *cestui que trust* than otherwise, in the conveyance of the title of the property sold by the *cestui que trust.* In such case, we think the purchaser of the trust property was bound to know whether the title of such *cestui que trust* was in litigation when he negotiated for a purchase, and if he purchased pending such litigation he purchased with constructive notice of the rights of the litigants, and was bound by the judgment.

2. But, independent of the fact that he purchased the property *pendente lite,* and was therefore bound by the judgment in the creditor's action, there is no evidence in this case that the appellant purchased for a valuable consideration, in good faith and without notice in fact of the rights and claims of the creditors of Smith. As the evidence in the record shows that respondent has the title to the lands in controversy except as against a purchaser in good faith for a valuable consideration and without notice of his rights, the appellant, in order to defeat this title of the respondent, was bound to establish by proof on his part that he was such purchaser, before he could ask the court to adjudge that the respondent should release his claim to him. *French v. Loyal Co.,* 5 Leigh, 640; *Jerrard v. Saunders,* 2 Ves. Jr., 456; *Wallwyn v. Lee,* 9 Ves. Jr., 31–2; *Boon v. Chiles,* 10 Peters, 211; *Simson v. Hart,* 14 Johns., 63, 74; *Anderson v. Roberts,* 18 Johns., 516.

It is clear, therefore, that the respondent has shown in himself such a title and interest in the lands in dispute as must defeat the appellant's claim to the relief asked for in this action, unless he is barred from setting up such claim as against the appellant, by reason of the proceedings and judgment in the action commenced by the trustee in the circuit court for

Rock county for the foreclosure of the mortgage given to him by Smith.

It is argued by the learned counsel for the appellant, that, as the plaintiffs in the creditor's suit, under whom the respondent claims title, were made parties defendant to such foreclosure action, and suffered the bill to be taken as confessed against them, they are now barred from alleging that such mortgage was fraudulent and void as to them and that their rights as judgment creditors of the mortgagor are paramount to the claim of the mortgagee.

In answer to this claim on the part of the appellant, it is insisted that there are two reasons why such judgment does not bar the respondent and those under whom he claims: *first*, that the claims of the judgment creditors were prior and paramount to the claim of the mortgagee, and that, therefore, the foreclosure of the mortgage does not cut off or bar their rights — that they were not compelled to litigate their rights in such foreclosure action, and such rights are not affected by the foreclosure; *second*, that the creditors, having first commenced their action in the United States circuit court to enforce their claims against the property of their judgment debtor, had the right to have their claims adjudicated in that action in that court, and the commencement of the foreclosure action subsequently thereto, and making them defendants therein, could not deprive them of that right.

Whether the question of the priority of the right of the judgment creditors, as against the mortgagee, could have been litigated in the foreclosure action, may be a question of some doubt. There would seem to be no impropriety in allowing a subsequent judgment creditor, when made a defendant in a foreclosure action, to defend the action by showing that the mortgage was fraudulent and void as to him, and that, although his judgment lien is subsequent in time to that of the mortgage, yet it is in fact prior and paramount to the lien of the mortgage. Such a defense would not be a counterclaim,

unless the creditor asked affirmative relief, and there would be no question upon such an answer, as a mere defense, whether the proper parties were in court to permit such matter being set up by way of counterclaim for the purpose of having the mortgage set aside and declared void as to such defendant, or to have the foreclosure proceed, and a sale made, and the proceeds applied to the payment of the judgment creditors, before applying the same to the satisfaction of the mortgage.

If the judgment creditors had desired to litigate their rights in the foreclosure action, for the purpose of having their judgment paid out of the proceeds of the sale before applying the same to the payment of the mortgage debt, and for that purpose it was necessary that the *cestui que trust* should be a party to such action, it is probable that upon their application she would have been made a party so as to enable them to litigate their claim in that action.

There are precedents for this practice, and we see no serious objection thereto. *Horn v. Volcano Water Co.*, 13 Cal., 62; *Coster v. Brown*, 23 Cal., 142; *Lord v. Morris*, 18 Cal., 482; 2 Jones on Mortgages, § 1441; *Union Bank v. Bell*, 14 Ohio St., 200; *Dawson v. Danbury Bank*, 15 Mich., 489.

Whether the judgment creditor must avail himself of this right to litigate the question of the validity of the mortgage in the foreclosure action, or be barred from setting up such invalidity in another action, may admit of grave doubt. It may be urged with great plausibility, that unless the complaint in the foreclosure action contains other allegations than the general one that the claim of the judgment creditors is subsequent and subject to the claims of the mortgagee, if such creditors suffer judgment to be taken by default, such judgment has no other effect than to bar such defendants from the right of redemption as subsequent judgment creditors, and does not bar them from alleging and showing that the mortgage is in fact fraudulent and void as to them. But as we prefer to place the right of the judgment creditors in this case

upon the ground that, as their action in the United States circuit court to avoid the mortgage was commenced before the foreclosure action, they had the right to pursue their remedy in that court, and were not, therefore, called upon to assert their right in the foreclosure action, we shall not continue the argument upon this point. We are of the opinion that the second reason assigned by the respondent why the judgment in the foreclosure action does not bar the respondent from attacking the validity of the mortgage given to the trustee, and his title acquired by the sale under the judgment therein, is conclusive against the appellant, and that the judgment in that action, and the sale made in pursuance thereof, have no effect upon the rights of the respondent in this action. Their only effect, if any, was to change the claim of the trustee to the lands in controversy from a mortgage lien to a legal title in trust. The authorities upon this point are numerous, and seem to settle the point beyond any doubt, and are clearly in accord with reason and justice. It would hardly have been questioned, even by the learned counsel for the appellant, that, if the trustee, as well as the *cestui que trust* and the grantor of the trust estate, had been a party to the creditor's action, the judgment in such action would have been conclusive as to the rights of the creditors, notwithstanding the judgment and sale in the foreclosure action; but as we hold that the absence of the trustee as a party to such action did not affect the jurisdiction of the court, nor render it powerless to pass upon the rights of the *cestui que trust* as against the rights of the creditors, and declare the mortgage void as to them, the trustee cannot, in another action, again litigate with such parties the same question. His right to hold the property, as against the creditors of the grantor of the trust estate, depends upon his right to execute the trust in favor of the *cestui que trust;* and, as between her and the creditors, the court has adjudged that it cannot be so executed.

The creditors, before any action was commenced by the

trustee to foreclose his mortgage, commenced an action, as they had the right to do, in the circuit court of the United States, for the express purpose of avoiding the mortgage on the ground that it was fraudulent and void as against them, and for the purpose of subjecting the mortgaged property to the payment of their judgments. According to all the authorities, they had the right to have the judgment of that court upon the matters sought to be litigated in that action; and neither the parties to such action, nor any other person acting in their behalf and solely for their benefit, could compel the plaintiffs in such action to go into some other court and there litigate their rights. This rule was very clearly and forcibly stated by Justice Grier in *Peck v. Jenness*, 7 How. (U. S.), 612, 624–5. The facts in that case were as follows: The plaintiffs in the action brought suit against the defendants in the court of common pleas of Cheshire county, New Hampshire, and attached the property of the defendants, as they were authorized to do by the laws of that state. The cause was continued, and in the meantime the defendants were declared bankrupts, an assignee in bankruptcy was appointed, and such assignee was made a defendant in the action. The assignee pleaded the bankruptcy of the defendants, their application for the benefit of the bankrupt law, his appointment as receiver in such proceedings, and the discharge of the defendants by the court in the bankrupt proceedings. To this answer the plaintiffs replied that they had attached certain goods of the defendants in good faith before the defendants had made application for the benefit of the bankrupt law, and asked that execution might be levied upon such goods so attached to satisfy their claims. To this reply the defendants rejoined that the assignee had presented to the district court of the United States a petition setting forth the plaintiffs' attachment of the goods, and averring that such attachment was not a valid lien on said goods, and that therefore the sheriff had no right to retain them, and prayed the court that the sheriff should deliver the

goods to the assignee or account for their value; and that the court, after notice to the parties and hearing, had decreed accordingly. To this rejoinder the plaintiffs demurred, and judgment was rendered in favor of the plaintiffs for the amount of their claim, and directing the amount to be levied and collected out of the goods attached in the action. This judgment was affirmed in the highest judicial tribunal of the state, and such judgment was removed by a writ of error to the supreme court of the United States. The first question considered in that court was, whether the plaintiffs, by virtue of their writ of attachment, had a lien upon the goods attached which was not divested by the bankruptcy of the defendants; and the supreme court of the United States held, with the state court, that this lien was not divested by the subsequent bankruptcy of the defendants, and their application to be discharged under the bankrupt law. The second question was, whether the adjudication of the bankrupt court that the plaintiffs had no lien upon the goods by virtue of their attachment, was conclusive against them, and a bar to their claiming such lien. Upon this point the learned justice, in his opinion holding that the plaintiffs were not concluded by such judgment of the district court of the United States, says:

"The district court has 'exclusive jurisdiction of all suits and proceedings in bankruptcy.' But the suit pending before the court of common pleas was not a suit or proceeding in bankruptcy, and, although the plea of bankruptcy was interposed by the defendants, the court was as competent to entertain and judge of that plea as of any other. It had full and complete jurisdiction over the parties and the subject matter of the suit; and its jurisdiction had attached more than a month before any act of bankruptcy was committed. It was an independent tribunal, not deriving its authority from the same sovereign, and, as regards the district court, a foreign forum in every way its equal. The district court had no supervisory power over it. . . . It is a doctrine of law too long

established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; *and the right of the plaintiff to prosecute his suit in it having once attached, that right cannot be arrested or taken away by proceedings in another court.* These rules have their foundation, not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other. . . . It follows, therefore, that the district court had no supervisory power over the state court, either by injunction or the more summary method pursued in this case, unless it has been conferred by the bankrupt act. . . . Instead of drawing the decision of the case into the district court, the act sends the assignee in bankruptcy to the state court, where the suit is pending, and admits its power to decide the cause. . . . An attempt to enforce the decree set forth in the rejoinder would probably have met with resistance, and resulted in a collision of jurisdictions much to be deprecated."

The rule laid down in this case has been followed in very many cases in the courts of the United States, as well as in the state courts. *Wallace v. McConnell,* 13 Peters, 146; *Campbell v. Emerson,* 2 McLean, 30; *Smith v. M'Iver,* 9 Wheat., 532, 535; *Gaylord v. R. R. Co.,* 6 Bissell, 286, 290, 293; *Union Trust Co. v. R. R. Co.,* id., 197; *Williams v. Benedict,* 8 How., 107; *Wiswall v. Sampson,* 14 How., 52; *Peale v. Phipps,* id., 368; *Pulliam v. Osborne,* 17 How., 471, 475-6; *Orton v. Smith,* 18 How., 263; *Hagan v. Lucas,* 10 Peters, 400; *Taylor v. Carryl,* 20 How., 583; *Freeman v. Howe,* 24 How., 450; *Taylor v. The Royal Saxon,* 1 Wall. Jr., C. C. R., 311; *Withers v. Denmead,* 22 Md., 135, 145; *Brown v. Wallace,* 4 G. & J., 497; *Brooks v. Delaplaine,* 1 Md. Ch.

Dec., 351. In the last case, the learned chancellor says: "The rule established by that case [referring to the case of *Brown v. Wallace, supra*], both by the reasoning and the judgment of the chancellor, and by the court of appeals, is this: that where two courts have concurrent jurisdiction over the same subject matter, the court in which the suit is first commenced is entitled to retain it. This rule would seem to be vital to the harmonious movement of courts whose powers may be exerted within the same spheres and on the same subjects and persons. . . . The only course of safety, therefore, is, when one court, having jurisdiction over the subject, has possession of the case, for all others, with merely coördinate powers, to abstain from any interference. Any other rule will unavoidably lead to perpetual collision, and be productive of the most calamitous results." The doctrine of the above cases was recognized by this court in *Wood v. Lake*, 13 Wis., 84–94. Chief Justice Dixon, in his opinion in that case, says: "It would be irrational and absurd to say that the court which had first acquired jurisdiction should arrest its proceedings because the court of another government, having concurrent jurisdiction over the same subject matter and parties, had *subsequently* attempted to take jurisdiction of the case; and particularly would this be so when the court which had first attained jurisdiction is clothed with ample power, and would, if asked, give to the plaintiffs in the second action the relief to which they might be entitled."

These authorities are a complete answer to the claim that the respondent, and those under whom he claims, are barred from disputing the validity of the mortgage by reason of the proceedings and judgment in the action to foreclose the same by the trustee. The plaintiffs in the creditor's action did not appear in the foreclosure action; the process was not personally served upon any of them; they waived nothing, therefore, by coming into that court and submitting their rights to its judgment; and it does not appear from the evidence that they

ever had in fact any knowledge of the pendency of such action. In such case, in the forcible language of Chief Justice DIXON, "it would be irrational" to hold that the proceedings in the subsequent foreclosure action, in which they might possibly have contested the validity of the mortgage had they had knowledge of the pendency of such action, should render absolutely void and ineffectual the judgment which, after a struggle for years, they had succeeded in obtaining in the action commenced by them long before such foreclosure suit was commenced, and by the commencement and prosecution of which they had fully notified the parties who were beneficially interested in such mortgage that they denied its validity as to them, and sought the judgment of the court declaring it invalid and void.

Suppose, in this case, the creditors had appeared in the foreclosure action, and had set up as an answer these proceedings in the circuit court of the United States, and asked the court to render a judgment in such foreclosure action saving the right to them to contest the validity of the mortgage as to them in the action then pending in the United States circuit court, and the circuit court of Rock county had refused to render a judgment according to such request, and had rendered a judgment such as was rendered in such foreclosure action, and this court should be of the opinion that such judgment would, in the absence of the fact that a former suit was pending involving the validity of the mortgage as to such creditors, be conclusive upon them that it was not fraudulent and void: then we would have the case of two judgments in two courts, both having jurisdiction of the subject matter, and both deciding the same questions in issue, and deciding them adversely to each other. In such case, according to all the decisions above cited, the maxim, *Qui prior est tempore, potior est jure,* must govern, and the judgment in the action first commenced must prevail. Any other rule would lead to collisions between courts, which would be likely to defeat the

ends of justice, and bring the courts of different sovereignties into unseemly conflict with each other.

The claim on the part of the learned counsel for the appellant, that the reservation of the rights of the trustee in the judgment in the creditor's action rendered such judgment a mere nullity so far as the trust estate was concerned, cannot be sustained. We think it very clear that such reservation was intended to protect, and only protected, such rights as the trustee had, if any, in the property, which he did not hold for the benefit of the *cestui que trust*. Any other construction of the judgment would render it a mere piece of waste paper. Under the reservation in such judgment, any interest or title Mead had in the premises, which was not held by him in trust for the parties to that action, was not and could not be affected thereby, and he and his grantees would not be barred by such judgment from setting up such title against the purchasers under such judgment; but such judgment was an effectual bar against Mead's right to hold such property for the mere use and benefit of the *cestui que trust*. As to her the court had the right to adjudge, and did adjudge, that she could take nothing as against the creditors under such deed to Mead. After such judgment Mead could no longer hold the property for the *cestui que trust*. He could not hold it in his own right, and he must therefore hold it for the benefit of those persons to whom it was adjudged to belong, unless he could show that he held it by some other title than that given to him by his trust deed.

The view we have taken of this case renders it unnecessary to discuss very many of the questions which were raised upon the argument, and discussed with great ability by the learned counsel for the respective parties.

Having come to the conclusion that the judgment of the United States circuit court, and the sale thereunder, divested Smith, the mortgagor and grantor of the trust estate, as well as Ann M. C. Smith, the *cestui que trust*, of all interest in the

lands in controversy, as against the respondent; that the respondent was not estopped from setting up the invalidity of the mortgage in trust by reason of the foreclosure judgment and sale in the circuit court of Rock county; and that the appellant has not shown.himself entitled to be protected against the claim of the respondent as a *bona fide* purchaser for a valuable consideration without notice — it is clear that the appellant is not entitled to the relief demanded by him in this action, beyond that relief granted to him by the judgment of the court below. Such judgment must therefore be affirmed.

*By the Court.* — Judgment affirmed.

RYAN, C. J., and ORTON, J., dissented.

A motion by the appellant for a rehearing was denied, and the following opinion filed, February 3, 1880.

TAYLOR, J. The learned counsel for the appellant moves for a rehearing in this case, mainly upon the ground that this court erred in not reversing that part of the judgment of the circuit court which adjudges " that the plaintiff was not the owner of the land under the mill-race; nor of the roadway along the race; nor of the dam mentioned in the complaint; nor of that portion of lot 2 in block forty (40), and of lot 25 mentioned in said judgment, on which the dam rests and abuts."

It is insisted by appellant's counsel that this finding is inconsistent with another finding of the circuit court, to wit: " That the plaintiff was the owner and in possession of the undivided three-fourths of said lot 25, and of lot 2, block 40, except the parts of the same on which the dam now rests and abuts."

He argues that the two findings cannot stand together, for the reason that the same evidence which shows that the plaintiff is the owner of the three-fourths of lot 25, and lot 2,

block 40, not covered by the dam, shows with equal clearness that he is the owner of the parts under the dam.

So far as the plaintiff shows any title to lot 25, such title is founded upon a tax deed issued by the city of Janesville, by which the city conveyed said lot 25 to one Marrietta F. Ford, bearing date July 31, 1865, and recorded in the office of the register of deeds for Rock county, on the third day of March, 1870.

It will be found by an examination of the findings of the learned circuit judge, that as to those lots and parts of lots, the title to which he found to be in the plaintiff, he also found that the plaintiff was in the actual possession thereof at the time this action was commenced; and as to those parts of such lots, the title to which he found was not in the plaintiff, he found that the plaintiff was not in the actual possession thereof at that time. After a careful consideration of the evidence upon this latter question, we think the circuit judge was clearly justified in finding a want of actual possession of that part of lot 25 and lot 2, block 40, upon which the dam rested. Without examining the mass of testimony in the case, it will be sufficient, perhaps, to show that the learned circuit judge was justified in finding that the plaintiff was not in the actual possession of the dam and the land under the same, before and at the time of the commencement of this action, to refer to the bill filed by Mead as trustee of A. M. C. Smith, in 1874, signed by the counsel for the present plaintiff and the husband of the *cestui que trust* of Mead, in which it is alleged that said Mead, as to the undivided three-fourths thereof, had enjoyed the quiet and peaceable possession of said lands, dam and water-power for ten years and upwards, and that the said A. M. C. Smith was the owner and in possession of the remaining undivided one-fourth part, and had been for the same length of time.

The evidence in the case clearly shows that neither the grantee in said tax deed nor the plaintiff under her had any

actual, exclusive possession of the dam or the lands under the same, up to the time of the commencement of this action in 1875. And, under the repeated decisions of this court, the grantee in a tax deed loses all title under such deed when the possession of the premises conveyed remains in the occupation of any person other than the grantee or those claiming under him for three years after the date of such tax deed, under the general law; and under the charter of the city of Janesville such grantee would lose all claim to the lands so possessed after the expiration of one year from the date of the record. *Edgerton v. Bird*, 6 Wis., 527; *Falkner v. Dorman*, 7 Wis., 388; *Knox v. Cleveland*, 13 Wis., 245; *Parish v. Eager*, 15 Wis., 532; *Sprecher v. Wakeley*, 11 Wis., 432; id., 442; *Lewis v. Disher*, 32 Wis., 504. Where the possession is disputed during the three years after recording the deed, the tax claimant loses his title unless he brings his action within the time limited. *Jones v. Collins*, 16 Wis., 594.

These decisions were all made under the R. S. of 1849, ch. 16, sec. 123. But it will be seen that section 21, subch. VII of ch. 474, P. & L. Laws of 1866, being the city charter of Janesville, is the same as section 123, ch. 16, R. S. 1849, limiting the period to one year instead of three, and adding the word "assessments" after the word "taxes." This latter section having been passed after repeated decisions of this court holding that it was, in the language of the court in the case of *Falkner v. Dorman*, "a two-edged sword, cutting both ways, and operated in favor of the possessor, to bar the title of whichever party was under the necessity of resorting to legal proceedings to obtain actual possession within the three years next after recording the tax deed," must receive the same interpretation given to said section 123, ch. 16, R. S. 1849. If, therefore, any person remained in the actual possession of the land deeded by the city of Janesville for taxes, for more than one year after the recording of the tax deed, other than the grantee in such deed, or some one claiming under him, the

title of such grantee fails, and he can maintain no action thereafter to recover the lands so possessed.

Nor do we think that under this rule the circuit judge was necessarily inconsistent in his findings. If the proof showed that the plaintiff took actual possession of that part of lot 25 not covered by the dam, within one year after the recording of his deed, then, as to that part of the lot, his title became perfect. If the grantee in a tax deed covering eighty acres gets peaceable possession of forty acres thereof within the time limited, and holds such possession until after the expiration of such time, there does not appear to be any good reason why his title to such forty acres should not be considered perfected, although the other forty acres may have been occupied by another party, adversely to his title, during the whole period of such limitation. In such case the result must be that the title is perfected in the tax-title grantee, as to the one forty acres, and avoided as to the other. So in the case at bar. If that part of lot 25 upon which the dam did not rest, was taken possession of within the year after the recording of his tax deed by the plaintiff, as to that part his title is perfect; and if that part of the lot covered by the dam was not taken possession of, and was in fact in the possession of others holding adversely to his tax title, and remained so until the expiration of the year, then as to that part of the lot the tax-claimant's title failed. *Wilson v. Henry*, 35 Wis., 241; *Pepper v. O'Dowd*, 39 Wis., 538; *Coleman v. Eldred*, 44 Wis., 210.

Without discussing the question whether lot 25 necessarily extended to the center of the river, and therefore the half of the dam was situated thereon, we are of the opinion that the plaintiff, by virtue of his tax deed, established no title to that part of the lot upon which the dam rested, though the lot did extend to the center of the river.

For the same reasons above stated, the tax deed of the lands under the raceway conveyed no title to the grantee named therein. They were all recorded more than one year previous

to the commencement of this action, and the evidence shows that the raceway was occupied by persons claiming in hostility to such tax deeds from the date of the recording thereof down to the commencement of this action.

Without determining the point, we think it probable that the learned circuit judge was right in holding that the lands under the raceway constructed for the benefit of all the owners of lots along which it ran, could not be assessed and taxed separately from the lots it was intended to benefit and did in fact benefit. The case of *Spensley v. Valentine*, 34 Wis., 154, goes very far in support of the opinion of the circuit judge. The race and roadway having been constructed for the sole purpose of accommodating the lots abutting thereon, it is probable that all those who purchased the adjoining lots with the right to draw water from such race, would take title to the lands under the race and roadway opposite their respective lots. See *Pettibone v. Hamilton*, 40 Wis., 402. It is, however, unnecessary to decide that question in this case. It is sufficient, to defeat the plaintiff's title under his tax deed, that the possession of the same remained in persons holding hostile to his tax title claim for more than one year after the same were recorded.

The plaintiff showed title to the undivided three-fourths of lot two (2), block forty (40). This lot lies on the east side of the river, and at the east end of the dam. The court below, without questioning the theory of the law in this state, that a lot bounded by a navigable stream takes to the center or thread of the river opposite, and that a conveyance of such lot by the owner thereof, in the absence of evidence showing that the contrary was intended, will carry the title to the center of such stream, held that the plaintiff, under his title to lot 2, of said block, did not take any part of the dam or the lands under the same.

The original owners of lot 2, block 40, having title to the center of the river opposite thereto, it was competent for them

to separate the title and ownership of that part thereof lying under the stream from that lying upon the bank; and if the title was so separated by the act of the owner, before his conveyance to the person under whom the plaintiff now claims title, then the subsequent conveyance of said lot 2 by general description would not convey the title to that part of it which had been separated therefrom, and upon which the dam in fact rested. It is argued with great force and ability by the learned counsel for the respondent, that the evidence clearly established the fact that the dam and the lands upon which the same rests and abuts, were treated as entirely separated from lot 25 at the one end, and lot 2 at, the other end thereof; and that in the conveyance of these lots, after the erection of said dam, there never was any intention to convey any part of the dam or the land upon which the same rested. The court below found, in substance, that the parts of the lots upon which the dam rested, had been separated from the parts of said lots outside of the bed of the river; and that the conveyance of lot 2, block 40, long after the erection of said dam, by its general description, did not convey the title to the land, under the law, or any part thereof.

We are inclined to hold that the evidence justifies this finding. It appears that the owners of lot 2, block 40, and the lands adjoining the river on the west side thereof, where the dam is now situated, obtained from the state a right to construct a dam across the river at that point for hydraulic purposes, and to sell and lease the right to use the water from such dam. Without this grant from the state, the owners of said lands, though owning the soil under the river, had no power to construct a dam thereon.

Acting under this authority from the state, a dam was built across the river as early as 1846, and has been maintained there from that time to the present. The owners of the dam, previous to the date of the conveyance of said lot 2 under which the present plaintiff claims, had sold and leased the

right to use the water from said dam in large quantities, and for large sums of money paid therefor; in which conveyances the grantees, their heirs and assigns, bound themselves to contribute to the maintenance of said dam in the future, in proportion to the number of square inches purchased by them respectively. This covenant has been construed to mean that the amount to be contributed by each should be in the proportion as the number of square inches purchased is to the whole number of square inches which the dam furnished. These leases and conveyances gave to the grantees and lessees, their heirs and assigns, the right to maintain said dam across the river where the same was located; and no subsequent conveyance by the original owners of the dam itself, or of the lots at the end thereof, could take away such right. If, in the exercise of the right given by the law authorizing the construction of the dam, the owners thereof had sold all the water which the dam afforded, with covenants on the part of their grantees, their heirs and assigns, to keep up and maintain the same, it seems to us that if the original owners had retained the title to the lots on either side of the river at the ends of the dam, they would have had no title left to the dam itself or the lands upon which it rested, but that such title and right would have passed to their grantees, who had covenanted to keep the same in repair and who would be the only persons interested in its future maintenance. Such owners having sold the dam itself, and the perpetual right to maintain and use the same, the title to the land upon which the same rested passed to their grantees.

This seems to have been the view taken of it by the owners of the dam, as the evidence clearly shows that they have gone on selling and leasing the right to use the water from the dam long after the title to this lot 2, block 40, had passed from their ownership. And it would seem from the evidence that this must have been done with the knowledge and acquiescence of the plaintiff after he acquired the title to the lot under

which he now claims to own the east half of the dam, or the lands under the same.

It seems clear to us that, when the original owners had conveyed all the water afforded by the dam, and had relieved themselves from maintaining the same by covenants requiring the grantees to maintain it, such grantees would own the same as tenants in common, each owning such proportion as his quantity of water bore to the whole quantity afforded by the dam. Certainly, after such conveyances, the owners of the water would have the power to remove the old dam if they saw fit, and construct a new and better one for their use. The right granted to the original owners to build and maintain a dam across the river at that place would have passed from the original owners to their grantees. And under such grant from the state no further right would remain in them to build or maintain a dam at that place. If the dam itself and the perpetual right to maintain the same passed to the grantee of the original owners, then it seems to us that the original owners' title to the land under the dam would pass also, under the well established rule of law that a deed conveying a house, unless it be clearly made to appear that it was intended that the house should be removed by the grantee, would convey the lands upon which the house was situated. Angell on Water-Courses, §§ 155, 155 a, 156, 157, 157 a; 3 Washburn on Real Property, 389 and side p. 623, and cases cited; *Blain v. Chambers*, 1 S. & R., 169; *Bacon v. Bowdoin*, 22 Pick., 401; *Whitney v. Olney*, 3 Mason, 280; *Forbush v. Lombard*, 13 Met., 109; *Morton v. Moore*, 15 Gray, 573; *Owen v. Field*, 102 Mass., 102; *Hapgood v. Brown*, 102 Mass., 453; *Prescott v. White*, 21 Pick., 341; *Moulton v. Trafton*, 64 Me., 222.

We do not know, from the evidence in this case, that the owners of the dam have granted or leased all the water which the dam affords, and we take it for granted that they have not. We have stated what we think would be the condition

of· things if such had been the fact, for the purpose of showing the effect which the granting of a portion of the water afforded by the dam must have upon the title to the lands under the same, and the right to maintain it, for the purpose of showing that it was not the intent of the owners in granting lot 2, block 40, to convey the land under the dam or any part thereof.

We think the grants of water from the dam, with covenants compelling the grantees to maintain the same, without granting in terms any interest in the lots at the end of the dam, is strong evidence showing the intention of the owners to separate the ownership of the dam itself, and the power created thereby, from the mere ownership of the lots at the ends thereof; and this is strengthened by other acts of the owners of lot 2, indicating such intention. In the several conveyances of said lot it is evident, from the value placed thereon, that there was no intention of vesting in the grantees of such lot any title or interest in the dam or water-power. While the dam and water-power is valued by the original owners at several hundred thousand dollars, this lot is valued, at the very highest, at $4,000 or $5,000, and was in fact bargained away by Coulton, under whom the present plaintiff claims, in 1861, for less than $400. It would seem that Coulton, when he owned it in 1861, could not have considered that, as a part of it, he owned half of the dam and water-power. Without reviewing in detail the evidence tending to establish the fact that the title to the east half of the dam and the bed of the stream under the same did not pass to the grantee of lot 2, block 40, we think the evidence very clearly shows that it was not the intention of the original grantors that such title should pass by such deed, and that the grantee of such original owners, and his grantees, understood, when such conveyances were made to them, that there was no such intention. The building of the dam under the authority of the state and selling the right to use the water therefrom, with covenants on the part of the

grantees, their heirs and assigns, to maintain such dam forever thereafter, without conveying to them any interest in lot 2, block 40, or lot 25, at either end of the dam, is evidence that the dam and land upon which the same rested, and the water-power thereby created, were treated by all parties as a piece of property separated from the lots at the end thereof. The judgment of the circuit court finding that the plaintiff was not the owner of the land under the east end of the dam was right, and was properly affirmed.

We do not find anything in the argument of the learned counsel for the appellant on his motion for a rehearing, which shakes our confidence in the correctness of our former opinion upon the main question in the case, and shall not, therefore, attempt any further argument in its support.

*By the Court.* — The motion for a rehearing is denied, with $25 costs.